**Joan WOODRUFF et al., Plaintiffs,**

v.

**Hewitt P. TOMLIN, Jr., et al., Defendants.**

Civ. No. C–74–6.

United States District Court, W. D. Tennessee, E. D.

Dec. 10, 1976.

Norman Herring, Phoenix, Ariz., James F. Schaeffer, D. Franklin Moore, Jr., Memphis, Tenn., for plaintiffs.

Leo Bearman, Jr., John J. Thomason, Memphis, Tenn., Victor F. Schneider, Jackson, Tenn., for defendants.

## MEMORANDUM DECISION

BAILEY BROWN, Chief Judge.

This is a legal malpractice case in which damages are sought from the defendant lawyers for losing personal injury cases in a jury trial. Plaintiffs contend that the lawyers were guilty of negligence and other wrongdoing in the investigation, trial and appeal of the cases and that this proximately caused the loss. This court has jurisdiction on the basis of diversity of citizenship. This malpractice case was submitted to a jury, which was unable to agree on a verdict and a mistrial was declared. Thereafter, defendants moved for a judgment n.o.v. and for a dismissal of the case; briefs have been filed and argument has been had. This court concludes, for reasons herein set out, that the motion must be granted and the action dismissed.

The automobile accident out of which this litigation arose occurred in Chester County, Tennessee in 1968. At the trial in question, there was ample evidence to support the following account of the accident. Plaintiff Patricia Woodruff, who was sixteen and had just obtained a driver's license, and her sister, plaintiff Joan Woodruff, who was fifteen, with their father's permission, had taken the family Chrysler to Chickasaw State Park on Highway 100. There they saw a friend, a young girl named Sterling, who also was driving a car. Both cars left the park at about the same time with the Woodruff girls behind the Sterling girl. Although Highway 100 is two-laned and is up and down hills, the Woodruff girls managed to pass the Sterling girl before the point of the accident, which was one and one-half miles from the park. Just prior to the accident, when the Woodruff girls topped a hill, they saw a vehicle in front of them being driven by one Nobles headed in the same direction in their lane. Nobles was either stopped or moving very slowly and had his left turn signal on preparatory to turning into a side road on the left. Patricia Woodruff applied her brakes, put down a total of 252 feet of skid marks, which were initially on her right side and then on the left side of the highway. The car skidded sideways for a considerable part of this distance and came to rest with the front end off the left side and the rear on the highway. It did not strike the Nobles vehicle. One Pomeroy, an employee of one Teague, who was driving a loaded gravel truck in the opposite direction, struck the rear of the Woodruff vehicle. Sterling had to swerve to her right onto the shoulder of the highway to keep from being hit by the gravel truck, which had swerved to its left in an effort to avoid hitting the Woodruff car. The result was that both of the Woodruff girls received serious and permanent injuries, Joan receiving even more serious injuries than did Patricia.

The Woodruffs had their liability insurance coverage with the Tennessee Farmers Mutual Insurance Company, whose investigator was asked by Charles Woodruff, the father, who would represent them in behalf of the insurance company. When he learned that the defendant Tomlin, a lawyer in Jackson, would do so, Woodruff called on Tomlin and employed him and his law firm to represent himself and his daughters in prosecuting any claims they

might have. Tomlin learned that, according to the Woodruffs, Patricia Woodruff had been driving at a reasonable speed, that the Woodruff vehicle had been at rest for several seconds (five to eight) before it was struck by the oncoming gravel truck, and that, in any event, the Woodruffs, including Joan, did not want any blame to be placed on Patricia, the driver. Tomlin promptly went to the scene, took pictures, reviewed the investigation file of Tennessee Farmers, and filed suit for the Woodruff girls and their father against Nobles, Teague and Pomeroy. Pomeroy sued the Woodruffs for his personal injuries and Teague for the damage to the gravel truck.

The first trial in the Circuit Court of Chester County resulted in a hung jury, nine to three against the Woodruffs. At the second trial the jury found against the Woodruffs and in favor of Teague and Pomeroy. The verdict was approved by an experienced and able trial judge (who sat as a "thirteenth juror") and, upon appeal by defendants in behalf of the Woodruffs, the judgment below was affirmed by the Tennessee Court of Appeals.[1] Both trials were conducted by defendant Tomlin for the Woodruffs. One of his partners wrote the brief on appeal.

Thereafter, the instant action was filed by Patricia and Joan Woodruff (their father did not sue) against their lawyer, Tomlin, and his partners. This court dismissed the action as being barred by the statute of limitations, which dismissal was reversed on appeal (511 F.2d 1019 (6th Cir. 1975)) on the basis of a Tennessee decision that became available after the ruling here but before the ruling in the Court of Appeals. This malpractice case was then set for trial in July, 1976.

Plaintiffs contended in their complaint and amended complaint that Tomlin and his partners were guilty of negligence in the investigation, trial and appeal of their cases and that such negligence proximately caused the loss of their claims. Pursuant to pre-trial order, plaintiffs specified that the

defendants had been guilty of negligence in failing to personally interview a potential witness (who had been interviewed by the Tennessee Farmers investigator), in failing to present as a witness an accident reconstruction expert, in failing to prepare and introduce proper maps and plats, in failing to present adequate evidence that would support a reliance on last clear chance or discovered peril, in failing to object to examination of an expert offered by defendants or to properly cross-examine him, in failing to rely on certain statutes that were claimed to be applicable, in failing to object to a jury instruction, in failing to use available witnesses in rebuttal, and in failing, on appeal, to raise and argue all necessary assignments of error. Plaintiffs contended, as stated, that each and all of said acts or omissions proximately caused the loss of their claims.

In addition to the foregoing negligence alleged, plaintiffs contended that defendant Tomlin, since he represented Tennessee Farmers, had a conflict of interest in representing Joan Woodruff because she had a potential claim against her sister Patricia. In this connection, it has been the position of defendant Tomlin that there was never a conflict since Joan had stated from the first that Patricia was without fault and in detail supported the theory of the accident as related to him from the beginning by the father. Further, defendants contend that the coverage would have been only $10,000 and that in any event there would have been no coverage under the policy for Patricia with respect to a claim by her passenger-sister; there is no proof tendered or in the record on these coverage questions one way or the other. In any case, it appeared to this court that this claim based on alleged conflict of interest on the part of defendant Tomlin should not be tried with the claims of negligence in losing the lawsuits and therefore it was, by pre-trial order, not dealt with at the trial.

The court had the impression that the only conflict of interest contention made by

1. Except that, insofar as the jury verdicts assessed damages against Joan Woodruff, the judgments were reversed and the actions dismissed as to her.

plaintiffs had to do, as above set out, with defendants' representation of the Woodruff's liability insurance company. However, just prior to the trial, plaintiffs sought to make the further contention that defendant Tomlin should not have represented both Joan and Patricia, since, if they had had separate counsel, there would have been advantages in offering witnesses and in the right to cross-examine them, and, further, Patricia's claimed negligence in operating the Woodruff car would not have rubbed off on Joan in the jury's mind.[2] The court concluded, at a pre-trial conference, that this contention, also, should not be tried with the contentions of negligence against defendants in their investigation, trial and appeal of these personal injury cases.

For completeness, it should be mentioned that defendants were charged with negligence in failing to remove this case to the federal district court at Jackson after the first trial. It appeared to the court that there would have been a serious question as to whether plaintiffs had at that time acquired an out-of-state domicile and therefore, in the malpractice trial, the jury would also be trying the domicile issue. In any event, we determined that it would be speculation to say that federal jury would have rendered a favorable verdict for the Woodruffs and therefore we dismissed this claim at a pre-trial conference.

The court determined that the malpractice liability of defendants would be tried first and, if liability were determined favorably to plaintiffs, the question of damages would then be tried. However, so that plaintiffs could show the malpractice jury the seriousness of their injuries (in support of their contention that defendants did not exercise proper care), by agreement plain-

tiffs were allowed to read to the jury a full summary of their injuries and damages. Moreover, the entire transcript (except that part dealing with injuries) of the second personal injury trial was read to the jury as well as the lengthy charge to the jury and the brief on appeal. This court had concluded that questions of law with respect to the personal injury trial became, with the aid of expert testimony, questions of fact for the malpractice jury and were so treated, leaving for the court questions of malpractice law. Plaintiffs presented, as part of their proof, an expert in accident reconstruction from Arizona and also an Arizona attorney who testified at length as to how these claims should have been investigated and tried by plaintiffs' lawyers. This court submitted to the jury practically all of plaintiffs' contentions as to negligence in the investigation and trial of the personal injury cases as well as their contentions that each and all of such negligent acts or omissions proximately caused the jury verdict against plaintiffs.[3] The court withdrew from the jury, at the conclusion of all the evidence, the question of negligence in handling the appeal, on the ground that there was no expert or other evidence to support plaintiffs' contention. The jury was unable to agree on a verdict as to any of the interrogatories.

On the motion for a judgment n.o.v. and for a dismissal, we therefore have to decide whether plaintiffs are entitled to have submitted to a jury the question whether defendant lawyers were guilty of negligence which proximately caused the loss of their claims and whether plaintiffs or either of them are entitled to have their conflict of interest claims submitted to a jury. We conclude that they are not and that therefore the motion for a judgment n.o.v. and for dismissal should be granted.

2. This contention was made even though the trial judge had instructed the jury as to the circumstances under which the negligence of the driver may be imputed to the passenger and also the duty of care of a passenger.

3. The court determined that the Tennessee doctrine of remote contributory negligence (which

only reduces damages) would not come into play unless liability of defendants was found by the malpractice jury and then, in submitting the question to the malpractice jury as to what verdicts would have been found by the personal injury jury, the malpractice jury would have been instructed as to the doctrine of remote contributory negligence.

For some time prior to the trial, this court was particularly concerned because of our inability to find a reported decision dealing with this kind of case. Lead counsel for plaintiffs, who happens to be a member of the Arizona bar, reassured the court that he would supply such decisional law, but it never came.

Without any such decisions as guides, and analyzing the case as an original proposition, it seemed to this court that there are two main problems in maintaining such a case as this. The first is that the preparation for and trial of a lawsuit to a jury requires the exercise of a kind of judgment that is quite different from the kind of judgment exercised by other professionals. This is so because in dealing with human beings as the trial lawyer must, be they witnesses, judges, clients, adversary counsel and jurors, the factors that come into play are intangible and numerous, so that the trial lawyer has to rely on his education, practical experience, rational analysis and sheer instinct in making decisions. This being true, it was difficult for this court to believe that it would be proper to submit to a jury, based upon the expert testimony of a second-guessing lawyer who has the benefit of hindsight, the question whether the trial lawyer was negligent.

The second reason why this court had serious doubt as to whether this action could be maintained has to do with causation; the malpractice jury is called upon to determine whether, if something that was done by the defendant trial lawyer had not been done or something that was not done had been done, the jury verdict in the personal injury case would have been different. This means that, in the malpractice trial, the personal injury trial becomes a play within a play; that is to say, the personal injury trial is replayed, by reading the record thereof, before the malpractice jury and witnesses then testify about the things that were done or not done by the malpractice defendant. It is interesting to note that, in principle at least, if an action such as this can be maintained, then an action could be maintained by the plaintiffs in this malpractice case against the attorneys representing them here, in which case there would be a play within a play within a play! In any event, it seemed to this court that it would be speculation for the malpractice jury to say what the personal injury jury would have done but for (we will assume) negligence on the part of the trial lawyer.

Just prior to the trial, counsel for defendants found an English case that supported their position, but this court determined to go ahead with the trial, which consumed slightly over eight trial days, and, as stated, resulted in a hung jury.

After the trial, the Tennessee Court of Appeals decided a case which deals squarely with the question presented here. It cites and discusses the above-mentioned English case. This decision is *Stricklan v. Koella,* (Tenn.App., decided September 20, 1976). In that case, plaintiff had employed the defendant lawyer to represent him in a civil case brought against him for assault and battery. Just prior to the trial, plaintiff discharged the defendant lawyer, settled the case himself by a cash payment, and then sued the lawyer for legal malpractice, alleging negligence in the preparation of the case and in failing to get a change of venue. The trial judge sustained the lawyer's motion for a summary judgment. The Court of Appeals affirmed, saying, in part:

"Essentially and in simple terms, the cause of action stated is that retained counsel refused to use the trial tactics insisted upon by the client, for which refusal retained counsel's services were terminated; that the refusal of counsel to try or prepare the case in the manner insisted upon by the client (by filing of depositions) caused the client to be without representation on the day of trial and forced the client into an expensive settlement without a trial of his case; that the plaintiff was substantially damaged by the negligence of defendant because if the case had gone to trial and if counsel had taken depositions in the manner insisted upon and if the plaintiff and her witnesses in the suit against Stricklan

had testified in such manner so that discrepancies would appear between that testimony, if given, and discovery testimony, if taken, the jury (if there had been one) would have found in favor of Stricklan or if they found against him, would have found in a lesser amount than settled for if the jury would have considered the testimony discrepancy if it had appeared. All if the case had been tried in another county.

"We hold that there can be no such cause of action in this state.

\*   \*   \*   \*   \*   \*

"In the English case of *Rondel v. Worsley,* reported as (1966) 1 All E.R. 467 (1966 C.A.), 3 All E.R. 657 and (1967 H.L.) 3 All E.R. 993, numerous reasons by judges were given for the holding that as matter of law no action would lie against a lawyer by his client for negligence in and about his conduct of the client's case in Court. Some judges were of the opinion that since in England no action could lie against the client by the barrister for failure to pay a fee, the client could not sue the barrister for his conduct of the trial, the distinction between a solicitor and barrister being duly noted and recognition made of the existence of a cause of action against a solicitor. Other judges tended to base their conclusions on the fact that lawyers in the trial of cases, do not owe allegiance to the client only, but owe dual allegiance; one to the client and the other to the Court; and if a client were permitted to sue a lawyer for what the client believes to be negligent trial tactics, in that they did not inure (in the client's opinion) to the benefit of the client, a trial lawyer would find himself sued for following his allegiance to the Court.

\*   \*   \*   \*   \*   \*

"Additionally, in all negligence cases, whether they be automobile related or medical or legal malpractice related, before a recovery can be had, the nexus between the negligence and the injury must be shown. In a suit complaining of the manner in which proof was presented and the manner of examination and cross-examination of witnesses, only by pure guesswork can the verdict of a jury be examined and a so-called cause for that verdict be determined. No man shall suffer a judgment against him based on guess."

As heretofore stated, this court, at the pre-trial stage, determined not to try the contentions of the plaintiffs with respect to alleged conflict of interest along with the contentions of alleged negligence in the preparation, trial and appeal of the personal injury cases. It will be remembered that one conflict of interest claim is that defendants, who generally represented Tennessee Farmers in the Jackson area and were in such capacity defending the Woodruffs in the personal injury litigation, should not have represented Joan Woodruff, the passenger, as a plaintiff since she had a potential claim against her sister, the driver. Although, as stated, there is no proof or tender of proof of coverage , we assume for present purposes that there would have been coverage. Obviously, Joan Woodruff is not suing here for damages for failure of defendants to sue her sister; rather, they are contending that this alleged conflict in some way inhibited defendant Tomlin's prosecution of the suit against the parties who were sued. This court cannot see how this could be so and, in any case, it would again be speculation to say that this affected the outcome of Joan Woodruff's personal injury trial.

The other conflict of interest claim is that defendant Tomlin should not have represented both Joan and Patricia Woodruff in their capacities as plaintiffs, because there would have been alleged tactical advantages at the trial, above described, if they had had separate counsel. Again, we are of the view that, even assuming there would have been such advantages, it would be speculation for a jury to say that the absence of such advantage affected the outcome of the trial.

It is therefore ORDERED that the judgment n. o. v. be granted and the action dismissed.

The Clerk will enter a final judgment for the defendants.