Larry C. FLYNT; Hustler Magazine,
Inc.; L.F.P., Inc.,
Plaintiffs–Appellants,

v.

BROWNFIELD, BOWEN & BALLY;
C.W. Brownfield; Laurence E.
Sturtz, Defendants–Appellees,

v.

David L. KAHN, Third–Party
Defendant.

No. 88–3597.

United States Court of Appeals,
Sixth Circuit.

Argued March 23, 1989.

Decided Aug. 14, 1989.

Lynn L. Moore, Burt Fulton (argued), Virginia L. Reichard, Gallagher, Sharp, Fulton & Norman, Cleveland, Ohio, for plaintiffs-appellants and third-party defendant.

David J. Young, Murphy, Young & Smith, Columbus, Ohio, James S. Savage, III (argued), Columbus, Ohio, for defendants-appellees.

Before MARTIN, KRUPANSKY, and MILBURN, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Larry Flynt, Hustler Magazine, Inc. and L.F.P., Inc. brought this diversity action for legal malpractice against the law firm of Brownfield, Bowen & Bally and two of the firm's attorneys, C. William Brownfield and Laurence E. Sturtz. The district court granted the defendants' motion for summary judgment on the ground that the plaintiffs' claims were barred by the applicable Ohio statute of limitations. We affirm the decision of the district court.

I.

In May 1983, Flynt, Hustler and L.F.P. filed this legal malpractice diversity action against the Brownfield firm, Brownfield and Sturtz in federal district court for the Southern District of Ohio. The current action arose from an earlier lawsuit, *Guccione v. Hustler Magazine, Inc.*, No. 77CV–04–1692 (C.P. Franklin Co. 1980), in which the Brownfield firm and its attorneys, Brownfield and Sturtz, represented Flynt and Hustler Magazine, who were defendants in *Guccione*. Following a jury trial in February 1980, the plaintiffs in *Guccione* obtained a $40 million award

against Flynt and Hustler for libel and invasion of privacy. The plaintiffs accepted a remittitur and the amount of damages was subsequently reduced to approximately $4 million. On October 8, 1981, the Franklin County Court of Appeals affirmed the trial court's finding of liability in *Guccione* but reversed the award of damages. *Guccione v. Hustler Magazine, Inc.*, No. 80AP–375, 1981 WL 3516 (10th Dist.Ct. App.1981). The *Guccione* case was remanded to the Franklin County Court of Common Pleas for a retrial on the issue of damages; the retrial has not yet taken place.

Beginning in October 1981, David L. Kahn was employed by Hustler and L.F.P. as General Counsel, and he became dissatisfied with the legal representation provided to Hustler and L.F.P. by the Brownfield firm in the *Guccione* case. From November 1981 through January 1982, Kahn analyzed the Ohio appellate court opinion in *Guccione*, reviewed relevant documents in the case, did a significant amount of independent legal research, and discussed the case and the quality of representation provided by the Brownfield firm with several outside attorneys. In his deposition, Kahn stated that, during the period from November 1981 through February 1982, he had "pretty much" concluded that the Brownfield firm had committed malpractice in the *Guccione* case, although he did not reach the "final conclusion" that the Brownfield firm had committed malpractice until he had discussions with another attorney, John Duffey, in November or December of 1982.

Defendant Laurence Sturtz, a partner with the Brownfield firm, left the firm on January 22, 1982. Sturtz also notified Flynt and Hustler that he would not perform legal services for them after January 22.

On February 16, 1982, the Brownfield firm advised Flynt in a letter signed by C. William Brownfield that the firm would no longer represent L.F.P. or Flynt personally from that day forward. Brownfield did state in the letter that the firm would file the notices and applications for *certiorari*

in the pending *Guccione* case. On February 23, 1982, Brownfield also notified the Ohio state court personnel that the Brownfield firm would no longer represent L.F.P. or Hustler in the *Guccione* case, but indicated that he would not file a formal entry of withdrawal until new counsel had been designated.

In response to these actions by the Brownfield firm, Kahn declared in a letter to Brownfield, dated February 23, 1982, that legal action would be commenced against the firm for any damages suffered by L.F.P. as a result of the firm's withdrawal from the *Guccione* case. In a letter agreement dated March 12, 1982, the Brownfield firm entered into a limited employment relationship with L.F.P., Hustler and Flynt. The firm agreed that it would file the *certiorari* petition and the appellate briefs in an appeal of a denial of two specific motions and would complete the appellate process in *Guccione*. The firm also agreed to provide "whatever other reasonable legal services" that L.F.P.'s new counsel might request during any retrial of the *Guccione* case. The Brownfield firm performed the services for L.F.P. specified in the letter agreement from February 1982 through September 1982.

In June 1982, Kahn met again with John Duffey. On September 20, 1982, L.F.P. notified Brownfield and the Brownfield firm that Duffey and Alan Isaacman and their respective law firms had been retained as L.F.P.'s counsel of record in the *Guccione* case.

## II.

On May 24, 1983, Flynt, Hustler and L.F.P. filed this diversity action for legal malpractice against the Brownfield firm, Brownfield and Sturtz, alleging that the firm and the individual attorneys provided negligent representation in the *Guccione* trial and appeal in 1980 and 1981. The defendants subsequently moved for summary judgment on the ground that the action was barred by the applicable Ohio law, which provides a one-year statute of limitations for malpractice claims. Ohio Revised Code § 2305.11(A). According to

Ohio law controlling at the time the defendants' motion for summary judgment was filed, a cause of action for legal malpractice accrued and the statute of limitations began to run when the client discovered, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury. *Skidmore & Hall v. Rottman,* 5 Ohio St.3d 210, 450 N.E.2d 684 (1983). In their motion, the defendants argued that the plaintiffs did discover or should have discovered the alleged malpractice by late 1981, well over one year before the malpractice action was filed in May 1983.

In its order of December 5, 1984, the district court concluded that the "discovery rule" announced in *Skidmore* on June 29, 1983 did not apply retroactively to bar the plaintiffs' malpractice action, which had been filed in May 1983. Instead, the district court found this action to be controlled by *Keaton Co. v. Kolby,* 27 Ohio St.2d 234, 271 N.E.2d 772 (1971), which was in effect at the time this action was filed but was later specifically overruled by *Skidmore.* Under *Keaton,* a cause of action for malpractice accrued, at the latest, when the attorney-client relationship terminated. Applying *Keaton* to this case, the district court assumed that the attorney-client relationship between the parties terminated on September 20, 1982, when L.F.P. informed the Brownfield firm by letter that other attorneys had been retained as L.F.P.'s counsel of record. The district court accordingly concluded that the plaintiffs' malpractice claims were not barred by the one-year statute of limitations.

In 1987, the defendants filed two separate motions for summary judgment, again contending that the malpractice action was barred by the one-year statute of limitations. In its March 29, 1988 order, the district court refused to reconsider the retroactive application of the *Skidmore* discovery rule, but did conclude that its prior assumption regarding the date of the termination of the parties' attorney-client relationship was not supported by the newly-substantiated record. Specifically, the district court found that: (1) by leaving the Brownfield firm on January 22, 1982, Sturtz terminated his professional relationship with the plaintiffs as of that date, over one year before this action was filed; (2) Brownfield and the Brownfield firm terminated their attorney-client relationship with the plaintiffs by letter on February 16, 1982, over one year before this action was filed; and (3) the parties' relationship arising out of the March 12, 1982 letter agreement was separate and distinct from the parties' attorney-client relationship existing prior to February 16, and all of the malpractice claims against defendants arose from the defendants' handling of the *Guccione* trial and appeal, which occurred during the parties' attorney-client relationship before February 16, 1982. Accordingly, the district court concluded that, for purposes of the statute of limitations, all of the plaintiffs' claims accrued on February 16, 1982, when the attorney-client relationship terminated. Because the plaintiffs' malpractice claims were not asserted until May 1983, the district court held the claims barred by the one-year statute of limitations and granted summary judgment to defendants.

### III.

On appeal, the parties agree that Ohio law governs the resolution of this case. Based upon our interpretation of the applicable Ohio law and our review of the findings of the district court, we conclude that the district court did not err in granting summary judgment to defendants.

■ In their appeal, the plaintiffs argue that, under Ohio law in effect when this action was filed in May 1983, the district court erred by granting summary judgment to defendants on the ground that the statute of limitations had run because there is a genuine issue of material fact as to when the parties' attorney-client relationship terminated. Specifically, the plaintiffs contend that, pursuant to the letter agreement of March 12, 1982, the defendants continued to perform legal services for plaintiffs until September 20, 1982, when defendants were replaced as counsel of record. According to plaintiffs, the at-

torney-client relationship between the parties did not terminate on February 16, 1982 but continued until September 20, 1982. Because a genuine issue of fact concerning the termination date of the parties' attorney-client relationship exists, the district court consequently erred in granting summary judgment to defendants on the ground that, for purposes of the Ohio statute of limitations, all of the plaintiffs' claims accrued on February 16, 1982. *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988); *Muir v. Hadler Real Estate Mgmt. Co.,* 4 Ohio App.3d 89, 446 N.E.2d 820 (Franklin Co.1982).

We disagree with the plaintiffs' contention. We conclude that, under the applicable Ohio law [1], the district court correctly found the parties' attorney-client relationship to have been terminated by the February 16, 1982 letter from Brownfield to Flynt and therefore did not err in granting summary judgment to defendants on the ground that the one-year statute of limitations had run.

Ohio case law reveals relatively few cases discussing termination of the attorney-client relationship [2], but we believe the existing cases, particularly *Brown v. Johnstone,* 5 Ohio App.3d 165, 450 N.E.2d 693 (Summit Co.1982), make clear that the February 16 letter from Brownfield to Flynt terminated the parties' attorney-client relationship. In *Brown,* an Ohio court of appeal held that the trial court had properly granted summary judgment to a defendant attorney in a legal malpractice case on the ground that the statute of limitations had run because no genuine issue as to the termination of the parties' attorney-client relationship existed. The court stated that conduct dissolving the "essential mutual confidence between attorney and client signals the termination of the professional relationship." The court moreover explicitly agreed with the defendant attorney that "the attorney-client relationship is consensual in nature and the actions of either party can affect its continuance." Thus, the *Brown* court held that the plaintiff client's initiation of grievance proceedings against the defendant attorney before the local bar association evidenced the plaintiff's loss of confidence in his attorney such as to indicate a termination of the professional relationship, despite the plaintiff's statement that he considered the defendant to be his attorney even after he contacted the bar association. According to the court in *Brown,* the plaintiff's initiation of proceedings with the bar association and his receipt of a letter from the bar association stating that the defendant attorney had been reprimanded and that he should seek the aid of another attorney dissipated "any semblance of a professional relationship" between the plaintiff and the defendant and constituted an "affirmative act" sufficient to put the plaintiff on notice that his attorney-client relationship with the defendant had terminated. For these reasons, the appellate court in *Brown* found the defendant attorney entitled to judgment as a matter of law.

■ Applying *Brown* to the facts of this case, we similarly conclude that the defendants were entitled to summary judgment. On February 16, 1982, Brownfield advised Flynt in a letter that the Brownfield firm would "no longer represent L.F.P., Inc., any of its affiliated entities or you [Flynt] personally from this day forward" and that

---

**1.** The parties on appeal do not directly challenge the ruling of the district court that the "termination rule" of *Keaton Co. v. Kolby,* 27 Ohio St.2d 234, 271 N.E.2d 772 (1971), governs the accrual of the malpractice claims in this case. Because the parties do not assert that the district court erred in applying *Keaton,* we will also apply the "termination rule" of *Keaton* in resolving this appeal.

**2.** Our research did discover several cases involving the termination of the physician-patient relationship in the context of a medical malprac-

tice claim, and we note that the Ohio Supreme Court has approved of the trial court ruling as a matter of law as to the date of termination of the physician-patient relationship. *See, e.g., Ishler v. Miller,* 56 Ohio St.2d 447, 384 N.E.2d 296 (1978); *Millbaugh v. Gilmore,* 30 Ohio St.2d 319, 285 N.E.2d 19 (1972) in which the trial court's granting of a defendant doctor's motion for judgment notwithstanding the verdict was held proper because reasonable minds could come to only one conclusion on the issue of the termination of the physician-patient relationship.

Flynt should "take steps to acquire new counsel here and elsewhere as soon as possible." The letter additionally stated that, although the Brownfield firm would insure the preservation of Flynt's appellate rights in the pending *Guccione* case by filing the requisite notices and applications for *certiorari,* the firm would immediately be filing notices of its withdrawal as Flynt's counsel in pending actions. As stated in *Brown,* the attorney-client relationship is consensual and the actions of *either* party can affect its continuance. The February 16 letter clearly expressed the Brownfield firm's intent to terminate its professional relationship with the plaintiffs, and, in our opinion, this letter constitutes, in the language of *Brown,* an "affirmative act" sufficient to put the plaintiffs on notice that their attorney-client relationship with defendants had terminated. Furthermore, we agree with the district court's finding that the relationship between the parties arising from the March 12 letter agreement was a new relationship, which was separate and distinct from the attorney-client relationship existing prior to February 16. The agreement of March 12 was a limited arrangement under which the Brownfield firm agreed to provide specifically described services in specifically identified legal matters. The Brownfield firm, however, apparently agreed to enter into this limited relationship with L.F.P. only after L.F.P. threatened, in the February 23, 1982 letter, to take "prompt and appropriate legal action" against the Brownfield firm and Brownfield personally. We do not believe that the arrangement between plaintiffs and defendants, as evidenced by the March 12 letter, constitutes a continuation of the parties' previous attorney-client relationship. In the language of *Brown,* the "mutual confidence" so essential to the attorney-client relationship must be regarded as lacking in the carefully limited professional arrangement that the defendants entered into in response to threatened legal action by the plaintiffs. Based upon our interpretation of Ohio law as stated in *Brown,* we conclude that the district court did not err in holding as a matter of law that all of the plaintiffs' claims accrued on

February 16, 1982, when the parties' attorney-client relationship terminated. Because there exists no genuine issue of material fact as to when the parties' attorney-client relationship terminated, the grant of summary judgment by the district court was appropriate.

Although *Brown* defines what constitutes the termination of an attorney-client relationship more concretely than any other Ohio case, we believe our resolution of this appeal is also supported by the Ohio Supreme Court's most recent discussion of the statute of limitations for legal malpractice. In *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988), the court held that, in a legal malpractice case, the tolling of the statute of limitations should be limited to *"continuous* legal representation regarding a particular undertaking or transaction." (emphasis added). According to the court, a different standard could allow a client with knowledge of an attorney's malpractice to "unduly perpetuate the attorney's potential liability and exposure to suit." The reasoning of the Ohio Supreme Court in *Omni–Food* is particularly applicable to this case in which the district court refused to toll the one-year statute of limitations during the limited arrangement between the parties that arose from the March 12, 1982 letter agreement but held that the plaintiffs' claims accrued on February 16, 1982, when the parties' attorney-client relationship terminated. The legal representation provided by the defendants was clearly not, in the language of *Omni–Food,* "continuous," given the explicit termination of the attorney-client relationship by Brownfield's letter of February 16 and the subsequent creation of a new, limited relationship by the March 12 letter. Thus, under the rationale of *Omni–Food,* the district court's refusal to toll the statute of limitations while the defendants were providing legal services to plaintiffs under the limited arrangement existing after March 12 was warranted. The district court's holding that the plaintiffs' claims accrued on February 16 is further supported by the court's concern in *Omni–Food* that, under certain circumstances, a client could "un-

duly perpetuate" an attorney's exposure to suit. In this case, the defendants entered into the limited professional relationship evidenced by the March 12 letter at least in part because the plaintiffs threatened to commence legal action. To hold that the limited professional arrangement entered into by defendants because of threatened legal action by plaintiffs could toll the running of the statute of limitations for legal malpractice would allow the plaintiffs to perpetuate the defendants' "potential liability and exposure to suit" indefinitely by coercing the defendants into the arrangement. The district court's decision in this case therefore prevents the plaintiffs from employing their threat to take legal action against the defendants to "unduly perpetuate" the defendants' exposure to suit for malpractice. Based on our interpretation of Ohio law as expressed in *Brown* and *Omni–Food*[3], we conclude that the district court did not err in finding the plaintiffs' claims against Brownfield and the Brownfield firm to be time-barred and in granting summary judgment to these two defendants.

We also affirm the district court's grant of summary judgment to defendant Sturtz. The plaintiffs contend that, under Ohio partnership law, Sturtz may be held liable for partnership acts committed while he was a partner in the Brownfield firm; according to the plaintiffs, it is irrelevant that Sturtz left the Brownfield firm in January 1982, after he and his firm committed the alleged acts of malpractice. We agree with the plaintiffs that Sturtz can be held jointly and severally liable with the Brownfield firm, if the Brownfield firm can be held liable for its acts of malpractice. However, as previously discussed in this opinion, the Brownfield firm cannot be held liable for its alleged malpractice due to the running of the applicable statute of limita-tions. Because the statute of limitations has run as to the Brownfield firm, the statute has also necessarily run as to defendant Sturtz, a partner at the firm, for any acts of malpractice committed by the firm. In addition, the one-year statute of limitations has run as to Sturtz individually to bar any individual liability for any individual acts of malpractice committed by him because Sturtz terminated his attorney-client relationship with the plaintiffs on January 22, 1982, when he left the Brownfield firm and notified the plaintiffs that he would no longer perform legal services for them.

Based upon our review of the record and our understanding of the applicable Ohio law, we affirm the district court's decision granting summary judgment to all defendants. The judgment of the district court is affirmed.

KRUPANSKY, Circuit Judge, dissenting.

Because I hesitate to join the panel majority in the jury box to consider the credibility of witnesses and evidence in resolving conflicts of material fact in disposing of the summary judgment motion confronting this court in this appellate review and because I am compelled to accept and apply this circuit's pronouncements of law to this action and because I am committed to according full faith and credit to the current decisions of the Ohio Supreme Court, I must respectfully dissent.

Initially, I would concur with the majority opinion in its conclusion that the single issue presented by the factual scenario of this appeal is the determination of the date on which the one-year Ohio statute of limitations accrued in this action for legal malpractice. I would also concur with the

---

**3.** We note that the plaintiffs rely heavily on the case of *Muir v. Hadler Real Estate Mgmt. Co.*, 4 Ohio App.3d 89, 446 N.E.2d 820 (Franklin Co. 1982), in which the court of appeals reversed the trial court's grant of summary judgment to the defendant attorney on the ground that there was a genuine issue of material fact as to the date of termination of the attorney-client relationship. The plaintiffs' reliance on *Muir* is inapposite. In *Muir*, the parties had a loose relationship over a ten-year period involving representation by the defendant attorney in a series of many eviction cases; thus, the appellate court in *Muir* found a factual issue as to whether there was a single on-going attorney-client relationship existing throughout the ten-year period or whether a new attorney-client relationship was created for each eviction case.

panel majority's observations "that Ohio law governs the resolution of this case."

From the evidence disclosed by the record, the limitations period could have conceivably commenced to accrue on February 16, 1982 when the plaintiffs advised the defendants by letter that the Brownfield firm would "no longer represent L.F.P. Inc., any of its affiliated entities or you [Flynt] personally from this day forward" and that Flynt should "take steps to acquire new counsel here and elsewhere as soon as possible," or on September 20, 1982 when plaintiffs replaced the defendants as legal counsel of record in the *Guccione* proceedings. In the event that plaintiffs' February 16, 1982 letter is to be considered as the critical date of accruing the statute, it must be considered within the context of contemporaneous events including the *caveat*, critically significant under Ohio law, *incorporated into the announcement of February 16*, whereby the Brownfield firm *voluntarily committed itself to uninterrupted representation of the plaintiffs in the Guccione* case which had precipitated this action in malpractice between the parties. The letter stated "We will take steps to insure that your appellate rights are preserved in our *Guccione* case by filing the requested notices and applications for certiorari." Defendants continued to diligently pursue their commitment to the plaintiffs until September 20, 1982, when LFP notified Brownfield and the Brownfield firm that they had retained John Duffy and Alan Isaacman, together with their respective law firms, to replace the defendants as counsel of record in the *Guccione* proceedings. It should be noted that defendants' *volunteered commitment of continued representation* to protect the plaintiffs' rights *occurred seven days before* plaintiffs' house counsel, by letter, insisted upon defendants' continued representation in *Guccione* under threat of legal action. Moreover, the record disclosed that the defendants' representation of the plaintiffs was continuing and was so intended and characterized by the parties in LPF's letter of March 10, 1982 which was styled "Re: Representation of LPF, Inc., Hustler Magazine, Inc., Chic Magazine, Inc., Larry

Flynt and Althea Flynt," wherein the first paragraph stated: "This will serve to confirm our understanding of the terms upon which you and your law firm agree to *continue* to represent the above-named parties." Nowhere does the record allude to or characterize defendants' continued legal representation of the plaintiffs as a new contract for limited legal services.

Needless to say that in the event that February 16, 1982 is considered to be the date which accrued the one-year statute of limitations the majority is correct and the defendants must prevail. However, the conclusion of the majority derived from its interpretation of the conflicting material facts implicit in the March 10, 1982 document is arguably unwarranted and unsupported by the manifested composition of the letter. Considered *in pari materia,* the language of defendants' February 16, 1982 commitment volunteering continued uninterrupted legal representation in the *Guccione* case with defendants' March 10, 1982 letter, coupled with plaintiffs' subsequent good faith implementation of that volunteered commitment until September 20, 1982, when defendants were replaced as legal counsel, could have prompted reasonable minds to more justifiably conclude, as a matter of law, that the statute of limitations accrued on September 20, 1982 instead of February 16, 1982.

Moreover, the majority avoids the Ohio Supreme Court's pronouncements in *Frysinger v. Leech,* 32 Ohio St.3d 38, 512 N.E.2d 337 (1987); *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), and misconceives Ohio law enunciated in *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988). The majority anchors its logic in arriving at its disposition upon the following: "[T]he tolling of the statute of limitations should be limited to *continuous* legal representation regarding a particular undertaking or transaction." *Omni–Food,* 38 Ohio St.3d at 387, 528 N.E.2d at 944 (emphasis added). By isolating the word "continuous" the majority demeans the balance of the equally significant crucial language of the phrase emphasized by

the Ohio Supreme Court decision in *Omni–Food*, i.e., "legal representation *regarding a particular undertaking or transaction.*" *Omni–Food*, 38 Ohio St.3d at 387, 528 N.E.2d at 944 (emphasis added). Mindful of the pivotal language "regarding a particular undertaking or transaction," the majority invaded the jury's domain by assigning credibility and weight to conflicting material facts implicit in the February 16 and March 10, 1982 letters of the respective parties and formulated its arguably unwarranted and factually unsupported conclusion that "[t]he legal representation provided by the defendants was clearly not, in the language of *Omni–Food*, 'continuous,' given the explicit termination of the attorney-client relationship by Brownfield's letter of February 16 and the subsequent *creation of a new, limited relationship by the March 12 letter.*" Apart from the majority's arbitrary interpretation of the March 12 letter *creating* a new "limited relationship," an examination of *Omni–Food* militates against the panel majority's unwarranted and impermissible conclusions.

In context, *Omni–Food* succinctly posits the issue confronting this appellate review as "our next consideration as raised by defendant, is whether continued *general* representation should toll the statute of limitations, or whether the statute should be tolled with respect to acts of malpractice *relating to a particular undertaking or transaction.*" *Omni–Food*, 38 Ohio St.3d at 387, 528 N.E.2d at 944 (emphasis added). The Supreme Court of Ohio court answered the query in the following equally concise language: "We believe that appellee's assertion in this regard is well-taken, and therefore hold that a standard should limit the tolling of the statute of limitations to continuous legal representation regarding a *particular undertaking or transaction. . . .* In our view, a different standard could defeat the purpose of the statute of limitations where, for example, a client with knowledge of the attorney's malprac-

tice may unduly perpetuate the attorney's potential liability and exposure to suit."[1] *Omni–Food*, 38 Ohio St.3d at 387–88, 528 N.E.2d at 944 (emphasis added). Of equal significance to the case at bar, the Ohio Supreme Court stated: "[I]t should be pointed out that the question of when an attorney-client relationship for a particular undertaking or transaction has terminated *is necessarily one of fact.*" *Omni–Food*, 38 Ohio St.3d at 388, 528 N.E.2d at 944 (emphasis added); *see also Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987); *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

The instant case is within the four corners of *Omni–Food*. It is apparent from the record that defendants volunteered to and did continue to represent the plaintiffs in *Guccione* until September 20, 1982 when they were terminated and replaced by other legal counsel for which uninterrupted services they received $23,000 through July of 1982 and additional sums thereafter, from which reasonable minds could have justifiably concluded, as a matter of Ohio law, that the attorney-client relationship, in *Guccione*, was not concluded as between the parties until the September 20, 1982 date.

A continuing attorney-client relationship between the parties is supported by defendants' concession that they continued to provide uninterrupted appellate representation to plaintiffs in *Guccione* until September 20, 1982, during which time they attempted to correct their initial errors, if any, by perfecting a petition for *certiorari* to the United States Supreme Court and by appeals to Ohio courts from the denials of the Rule 37 and Rule 60 motions, which, if successful, could have vindicated them of their malpractice.

Apart from the ambiguity raised by the February 16 and March 10 letters, the defendants' concessions would, at the very least, dictate that it would have been appro-

---

**1.** The Supreme Court of Ohio has obviously distinguished between continued *general* legal representation and continued legal representation related to, as in the instant appeal, a *particular* undertaking or transaction. Accordingly, this court must disregard the defendants' withdrawal of its legal representation of the plaintiffs generally and must limit its consideration to defendants' legal representation of the plaintiffs in the ongoing *Guccione* case.

priate to permit a jury to resolve the controversial facts and to decide if the Brownfield firm's attorney-client relationship with plaintiffs survived during the entire period of the pending Rule 37 and Rule 60 motions and the perfection of the certiorari petitions. *See Vail v. Townsend,* 29 Ohio App.3d 261, 263, 504 N.E.2d 1183, 1186 (1985) (While attorney is attempting to correct his initial error, the attorney-client relationship continues.); *Muir v. Hadler Real Estate Management Co.,* 4 Ohio App.3d 89, 91, 446 N.E.2d 820, 823 (1982) ("As the [Ohio] Supreme Court noted, the termination rule strengthens the attorney-client relationship in that there is continued faith in the attorney to correct any errors that he has made during that relationship.") (citing *Keaton Co. v. Kolby,* 27 Ohio St.2d 234, 271 N.E.2d 772 (1971)).

Prevailing precedent endorses the principle that continuity of legal representation is not disrupted during the time interval between the conclusion of legal proceedings in a trial court and the initiation and exhaustion of an appeal. Legal representation throughout this entire period is deemed continuous. The reason for the rule is apparent: a client should not be required to initiate legal proceedings against his attorney while the attorney is pursuing an appeal. A client could hardly be assured of the attorney's zealous representation if the attorney is forced to simultaneously pursue the client's appeal and to defend a malpractice suit brought by his client. In any event, this circuit has squarely decided the issue in *Woodruff v. Tomlin,* a case construing an analogous limitations statute, when it specifically *rejected the majority's advanced position. Woodruff v. Tomlin,* 511 F.2d 1019, 1020–21 (6th Cir.1975), *mem. decision on remand,* 423 F.Supp. 1284 (W.D.Tenn.1976), *rev'd,* 593 F.2d 33 (6th Cir.1979), *aff'd in part, rev'd in part en banc,* 616 F.2d 924 (6th Cir.1980), *cert. denied,* 449 U.S. 888, 101 S.Ct. 246, 66 L.Ed.2d 114 (1980). In *Woodruff,* as in the instant case, the plaintiff complained of malpractice committed by an attorney during his trial court representation. The attorney continued to represent the plaintiff client in subsequent appeals from the adverse jury verdict. The Court ruled that the limitations period did not begin to run until the appellate process had concluded:

> The relationship of attorney and client did not end on the date of the oral argument; it certainly continued until after the Court of Appeals decided the case ... Until the case was finally terminated and a final judgment rendered the plaintiffs could not prove damage, because the Court of Appeals might have granted a new trial, and on retrial a different result could possibly have occurred.

511 F.2d at 1020.

If the rule *Woodruff* is applied to the instant case, it directs a continuation of the attorney-client relationship at least until the *Guccione* pending appeals had been exhausted and the case had been finally decided adversely to plaintiffs. *See, e.g., Northwestern Nat'l Life Ins. Co. v. Osborne,* 573 F.Supp. 1045, 1050 & n. 20 (E.D.Ky.1983) (legal malpractice not accrue until appeals exhausted), *on remand,* 610 F.Supp. 126 (E.D.Ky.1985), *aff'd without opinion by unpublished order,* 675 F.2d 592 (6th Cir.1986); *Bowman v. Abramson,* 545 F.Supp. 227, 228–29 (E.D.Pa.1982) (legal malpractice action does not accrue until appeal decided adversely to client); *Semenza v. Nevada Medical Liab. Ins. Co.,* 765 P.2d 184 (Nev.1988) (same); *Neylan v. Moser,* 400 N.W.2d 538, 542 (Iowa 1987) (same); *Amfac Distrib. Corp. v. Miller,* 138 Ariz. 152, 673 P.2d 792 (1983) (same); *Olivier v. National Union Fire Ins. Co. of Pittsburgh, Pa.,* 499 So.2d 1330, 1336–37 (La.Ct.App.1986) (attorney-client relationship terminated when Louisiana Supreme Court's writ denial became final); *Barrios v. Duran,* 496 So.2d 239, 239 (Fla.Dist.Ct. App.1986) (legal malpractice claim did not accrue until adverse judgment against client affirmed on appeal); *Diaz v. Piquette,* 496 So.2d 239, 240 (Fla.Dist.Ct.App. 1986) (same); *Gurkewitz v. Haberman,* 137 Cal.App.3d 328, 187 Cal.Rptr. 14 (1982) (same).

Mindful of the Brownfield firm's post-March 1982 representation of the same

client, on the same case, and plaintiff's refusal to retain defendants' new counsel, legal representation of plaintiffs was arguably not a "second" attorney-client relationship but could have reasonably been considered as a continuation of an existing ongoing relationship in the *Guccione* appeal. *Cf. Zimmie*, 43 Ohio St.3d at 58, 538 N.E.2d at 401 (Attorney-client relationship terminated and cause of action for legal malpractice against appellees accrued when client "terminated his relationship of *all* subsequent domestic relations matters ... and [*when client* ] *retained another attorney.*") (emphasis added). The Brownfield firm's February, 1982 "termination," at least as it applied to the *Guccione* case, was of no effect given the subsequent legal representation the defendants continued to provide in that action between March and September 1982. *See Bucaro v. Keegan, Keegan, Hecker & Tully*, 126 Misc.2d 590, 591–93, 483 N.Y.S.2d 564, 566–67 (Sup.Ct. 1984) ("As long as defendants represented plaintiff on the same issue or a related issue in a continuous manner, no termination of the attorney-client relationship occurred.") Accordingly, to characterize the volunteered, continuing, uninterrupted representation afforded by defendants in *Guccione* between March and September, 1982 as a new limited relationship is totally misplaced and inappropriate. At the very least, as mandated by the Ohio Supreme Court in *Frysinger, Omni–Food*, and *Zimmie*, the date of the actual termination and the accrual date of the statute of limitations was in conflict and should have been resolved by a jury.

The reliance of the majority opinion upon *Brown v. Johnstone*, 5 Ohio App.3d 165, 450 N.E.2d 693 (1982) is equally misplaced for a number of reasons. Initially, it is factually distinguishable from the case at bar. The *Brown* decision surfaced no conflict of material fact since Brown had conceded that he never contacted Johnstone or had any relationship whatsoever with him after his communicated grievance against Johnstone to the Akron Bar Association sometime in 1977. *Brown*, 5 Ohio App.3d at 167, 450 N.E.2d at 696; *id.* at 168, 450 N.E.2d 697 (Hofstetter, J., dissenting).

Consequently, the issue of *"continuous legal representation"* in a *"particular identifiable transaction"* was never joined, considered, or decided by the *Brown* opinion.

Secondly, even though the cardinal issue in the instant case was not joined or considered in *Brown*, I take no exception with its non-dispositive general observations that "the attorney-client relationship is consensual in nature and the *actions* of either party can affect its continuance," and that "[i]nitiating grievance proceedings before the local bar association evidences a client's loss of confidence in his attorney such as to indicate a termination of the professional relationship." *Brown*, 5 Ohio App.3d at 167, 450 N.E.2d at 695 (emphasis added). However, the panel majority stops short of addressing the central dispositive element of the decision when it fails to consider the next succeeding sentence of the paragraph wherein the court rationalized its previous statements in the following terms: "This conclusion is supported by the fact that Brown had [admittedly] no further contact with Johnstone after he contacted the bar association." *Brown*, 5 Ohio App.3d at 167, 450 N.E.2d at 695. The Ohio Court of Appeals unquestionably conditioned the language of the two sentences relied upon by the panel majority upon overt action which manifested Brown's "loss of confidence in his attorney such as to indicate a termination of the professional relationship," as reflected by the observation that "Brown had no further contact with Johnstone after he contacted the bar association." *Brown*, 5 Ohio App.3d at 167, 450 N.E.2d at 695.

Thirdly, *Brown* is an isolated dated Court of Appeals disposition which had not been reviewed by the Ohio Supreme Court which, through subsequent dispositions, has been eroded. *See Frysinger v. Leech*, 32 Ohio St.3d 38, 512 N.E.2d 337 (1987); *Omni–Food & Fashion, Inc. v. Smith*, 38 Ohio St.3d 385, 528 N.E.2d 941 (1988); *Zimmie v. Calfee, Halter & Griswold*, 43 Ohio St.3d 54, 538 N.E.2d 398 (1989).

Lastly, appellate court dispositions in Ohio do not constitute legal precedent.

Only Supreme Court opinions rise to the level of binding legal pronouncements.

Assuming, arguendo, the interpretation imposed upon the above language by the majority, the evidence available to this court when considered in context disclaims the majority's conclusions. At the very least, the facts are in conflict and should be resolved by a jury.

The majority's suggestion that by February, 1982, plaintiffs no longer had "confidence" in the Brownfield firm's ability is less than convincing. *See Brown v. Johnstone,* 5 Ohio App.3d 165, 167, 450 N.E.2d 693, 695 (1982). Despite the conjectured lack of confidence after March, 1982, plaintiffs continued to insist upon legal representation and advice from the Brownfield firm to the point of threatened legal action. Indeed, plaintiffs voluntarily paid more than $23,000 to the Brownfield firm for services rendered in the *Guccione* case between March and July, 1982 and additional sums thereafter. Certainly, plaintiffs' conduct and action did not reflect an objective loss of confidence in the Brownfield firm and it is difficult to believe that plaintiffs would have continued to rely so heavily on—and pay so much for—the services of defendants. Although plaintiffs, prior to March, 1982, certainly questioned the Brownfield firm's representation until they had actually retained other attorneys in September, 1982, it cannot be reasonably concluded (at least as a matter of law) that the confidence between attorney and client had completely "dissolved," as the *Brown* test required. *Brown,* 5 Ohio App.3d at 167, 450 N.E.2d at 695. *See also Bucaro,* 126 Misc.2d at 592, 483 N.Y.S.2d at 567 (client's frustration, questioning of tactics, and suggestion of alternative tactics did not signal the end of attorney-client confidence where clients continued to rely on attorney for representation).

The majority alternatively contends that the firm was "threatened" into continued legal representation of plaintiffs and that the attorney-client relationship should not be deemed to have continued during the period of coercion. However, the attorney-client relationship cannot be deemed termi-nated, at least as a matter of law, merely because the client pressures the attorney to continue his representation. Only if the client's pressure is in bad faith and designed largely to extend the attorney's exposure to liability should such coercion automatically terminate the attorney-client relationship. In the instant case, by contrast, plaintiffs insisted that the Brownfield firm remain as counsel because they required the firm's expertise, background, and knowledge to exhaust the appeal of *Guccione* and not because they sought to prevent the limitations period from running. A jury could justifiably conclude that plaintiffs would not have expended $23,000 on legal services if their primary purpose was merely to continue the attorney-client relationship and forestall running of the limitations period.

In considering the liability of Sturtz, I concur with the majority opinion's conclusion that he is liable with the Brownfield firm for all acts of alleged malpractice committed by said firm while he, Sturtz, was an active partner.

If I am to respect the mandate of the Supreme Court by construing the evidence most favorable on behalf of the party opposing the summary judgment motion, in this case the plaintiffs, and refrain from assigning credibility to the witnesses and the evidence developed by the record and, if I am to apply the existing precedent enunciated by this Circuit in *Woodruff v. Tomlin,* 511 F.2d at 1020–21, and the Ohio Supreme Court in *Zimmie,* and conclude that the attorney-client relationship is *continuous and uninterrupted during the appellate process,* and, if I am to assign full faith and credit to the pronouncements of the Ohio Supreme Court in *Frysinger v. Leech,* 32 Ohio St.3d 38, 512 N.E.2d 337 (1987); *Omni–Food & Fashion, Inc. v. Smith,* 38 Ohio St.3d 385, 528 N.E.2d 941 (1988); and *Zimmie v. Calfee, Halter & Griswold,* 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), and adopt Ohio precedent which teachers that:

> We [the Ohio Supreme Court] believe that the appellee's assertion in this regard is well-taken, and therefore hold

that a similar standard should limit the tolling of the statute of limitations to *continuous legal representation regarding a particular undertaking or transaction.*

. . . .

. . . [I]t should be pointed out *that the question of when an attorney-client relationship for a particular undertaking or transaction has terminated is necessarily one of fact.*

*Omni–Food,* 38 Ohio St.3d at 387–88, 528 N.E.2d at 944 (emphasis added), I am compelled to remand this case to the district court with instructions to proceed to trial so that a jury may resolve the conflicts of material fact and decide, pursuant to appropriate instructions from the court, the date upon which the one-year Ohio statute of limitations applicable to actions in legal malpractice commenced to accrue.