BROWN, APPELLANT, *v.* JOHNSTONE, APPELLEE.

(No. 10200—Decided March 3, 1982.)

*Mr. A. William Zavarello,* for appellant.

*Mr. David M. Best,* for appellee.

MAHONEY, P.J. Appellant, William L. Brown, challenges the trial court's granting of appellee's, Robert Johnstone's, motion for summary judgment on the ground that the statute of limitations, R.C. 2305.11, barred appellant's legal malpractice suit. We affirm.

### Facts

Brown retained Johnstone in 1963 to represent him on a claim before the Bureau of Workmen's Compensation. After Brown's claim was denied he asserts that Johnstone represented to him that some type of settlement would be forthcoming. This occurred sometime in 1965. Between 1965 and 1977 Brown claims to have talked to Johnstone on the average of once a month regarding an eventual settlement. Johnstone's affidavit, filed in this case, indicates that he spoke with Brown regarding the workers' compensation claim in August or September 1977. The affidavit also states that Johnstone had no further contact with Brown after 1977. Brown confirmed this fact during his deposition.

Sometime in 1977 Brown contacted the Akron Bar Association seeking action on his workers' compensation case. The bar association contacted Johnstone on this matter which resulted in the contact with Brown noted above. Subsequently to this, on March 7, 1978, the bar association conducted a hearing regarding Johnstone's handling of Brown's case. As a consequence of the hearing the bar association filed a complaint with the Board of Commissioners on Grievances and Discipline which eventually recommended a public reprimand. The reprimand was based on Johnstone's failure to notify Brown or his previous counsel that he was, in effect, withdrawing from the

case. The Ohio Supreme Court confirmed this recommendation on June 28, 1978. *Akron Bar Assn.* v. *Johnstone* (1978), 54 Ohio St. 2d 485 [8 O.O.3d 464].

Brown had contact with attorneys Joel Aberth and John Barrett of the Akron Bar Association during the pendency of the disciplinary proceedings against Johnstone. Following the Supreme Court's disposition of the case, Barrett contacted Brown to indicate that his workers' compensation case was closed and that as a result of the Supreme Court's decision Johnstone would be reprimanded. A letter attached to Barrett's affidavit, and addressed to William L. Brown, indicates that Barrett sent Brown a copy of the Supreme Court decision of June 28, 1978. It also advised Brown to discuss the decision with another attorney. Barrett sent this letter on September 1, 1978.

After seeking names of other attorneys, Brown contacted his present counsel, A. William Zavarello, in December 1978. After reviewing Brown's case, Zavarello filed a malpractice action on November 19, 1979. Appellant contends that no one ever informed him that Johnstone no longer represented him and, therefore, he considered Johnstone to be his attorney until he hired Zavarello. The trial court found that the attorney-client relationship terminated when Brown filed his grievance with the Akron Bar Association. Therefore, the court found Brown's action to be barred by the one-year statute of limitations.

## Assignments of Error

"1. Where an attorney represents a client for many years, the relationship of attorney and client remains in force until notice of termination or other clear manifestation of intent to terminate is communicated from one to the other.

"2. On motion for summary judgment, the inferences to be drawn from the underlying facts contained in depositions, affidavits and exhibits in support thereof, must be viewed in the light most favorable to the party opposing the motion."

The statute of limitations, R.C. 2305.11(A) provides in part:

"An action for libel, slander, assault, battery, malicious prosecution, false imprisonment, or malpractice * * * shall be brought within one year after the cause thereof accrued * * *."

In the syllabus of *Keaton Co.* v. *Kolby* (1971), 27 Ohio St. 2d 234 [56 O.O.2d 139], the Ohio Supreme Court stated:

"A cause of action for malpractice against an attorney accrues, at the latest, when the attorney-client relationship finally terminates."

Therefore, the question before us is, upon the record, when did the attorney-client relationship between Johnstone and Brown terminate.

There is a dearth of case law defining what constitutes the termination of an attorney-client relationship. In the *Keaton* case the court analogized to medical malpractice suits and stated that the justification for the termination rule applies equally to the attorney-client relationship. *Keaton, supra,* at 237. The *Keaton* court cited to *Wyler* v. *Tripi* (1971), 25 Ohio St. 2d 164, 167-168 [54 O.O.2d 283] (a medical malpractice case) in which the court concluded:

"The justification given for the termination rule is that it strengthens the physician-patient relationship. * * * In short, it was thought that the termination rule is conducive to that mutual confidence which is essential to the physician-patient relationship. * * *"

Although these cases state no criteria for when termination occurs, it is evident that conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the professional relationship.

Brown asserts that termination could not occur until Johnstone or an attorney from the bar association explicitly stated that Johnstone no longer represented him. However, as appellee aptly states,

the attorney-client relationship is consensual in nature and the actions of either party can affect its continuance. Initiating grievance proceedings before the local bar association evidences a client's loss of confidence in his attorney such as to indicate a termination of the professional relationship. This conclusion is supported by the fact that Brown had no further contact with Johnstone after he contacted the bar association.

The case before us must clear another hurdle, however, since the case comes to this court upon the granting of a motion for summary judgment. Civ. R. 56(C) provides in pertinent part:

"* * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * *"

Therefore, as appellant correctly states, the trial court must view all the evidence before it in a light most favorable to the party opposing the summary judgment. Accepting Brown's statement that he considered Johnstone to be his attorney even after he contacted the bar association, we still conclude that the trial court properly granted summary judgment in this case.

It is uncontroverted that as of September 1, 1978, as a result of Brown's contact, Barrett from the Akron Bar Association told Brown that his workers' compensation claim was closed, that he should seek the aid of another attorney and that Johnstone had been reprimanded as a consequence of Brown's original complaint. A copy of the decision was sent with Barrett's letter. At this point an affirmative act had occurred which was sufficient to put Brown on notice as a reasonable man that the attorney-client relationship with Johnstone had terminated. We need not reach the issue of whether Brown's belief, between 1965 and 1977 that a settlement would be forthcoming, was a reasonable belief and if he in fact, as a reasonable man, should have relied on the defendant's representations. In conjunction with Brown's prior actions to initiate proceedings with the bar association, Barrett's letter dissipates any semblance of a professional relationship between Johnstone and Brown. Therefore, we hold that there is no genuine issue as to the termination of the attorney-client relationship between Johnstone and Brown more than one year prior to the filing of Brown's malpractice suit, even when the evidence is construed in a light most favorable to Brown.

Because appellant filed his complaint more than one year after the attorney-client relationship terminated, his action is barred by the statute of limitations, R.C. 2305.11. Therefore, appellee was entitled to judgment as a matter of law and summary judgment was properly granted.

### Summary

We overrule both of appellant's assignments of error and affirm the judgment of the trial court.

*Judgment affirmed.*

HUNSICKER, J., concurs.

HOFSTETTER. J., dissenting. I respectfully dissent from the majority opinion.

As it concerns the plaintiff on defen-

dant's motion for summary judgment, the fact situation, illogical as it may seem to some trained legal minds, requires the questionable facts to be considered as factual questions. As the majority opinion states, "Appellant contends that no one ever informed him that Johnstone no longer represented him and, therefore, he considered Johnstone to be his attorney until he hired Zavarello. The trial court found that the attorney-client relationship terminated when Brown filed his grievance with the Akron Bar Association."

Although one may logically assume that the filing of a grievance with the bar association against one's attorney would be tantamount to a termination of the attorney-client relationship, it is not necessarily so. We have the plaintiff's own affidavit that indicates otherwise, supported further by the patience the plaintiff has exhibited with the defendant's dilatory tactics for fourteen years. We also have the related matter of the Supreme Court's support of the Board of Commissioners on Grievances and Discipline's uncontroverted finding in *Akron Bar Assn.* v. *Johnstone* (1978), 54 Ohio St. 2d 485, 486 [8 O.O.3d 464], "that respondent, at that time, failed to notify Brown or his previous counsel that he was, in effect, withdrawing from the case * * *."

One who is unsuspecting and untrained in the law, such as plaintiff Brown, could well believe that the function of his grievance complaint would simply be that of enlisting the bar association to urge Johnstone to expedite the matters that he (Brown) was unable on his own to get Johnstone to do, and that that would be the effect of a public reprimand. After all, as Brown noted in his affidavit, he still considered Johnstone as "our family lawyer."

The majority, in its opinion, correctly stated that the trial court must review all the evidence before it in a light most favorable to the party opposing the sum-

mary judgment. Then they accepted Brown's affidavit that he considered Johnstone to be his attorney even after he contacted the bar association, but, incredulously, in my opinion, concluded that the trial court properly granted summary judgment.

Concerning all the aspects of this case, and, most importantly, my acceptance, as well as that of the majority, of Brown's statement that he still considered Johnstone as his attorney after he contacted the bar association, it appears to me that the ends of justice are defeated by the granting of summary judgment for the defendant. The plaintiff should have his day in court. Accordingly, I would reverse the trial court.

HUNSICKER, J., retired, of the Ninth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

HOFSTETTER, J., of the Eleventh Appellate District, sitting by assignment in the Ninth Appellate District.