OPINION
Plaintiff-appellant, Anthony DiSabato, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment to defendants-appellees, Thomas M. Tyack 
Associates Co., L.P.A. ("Tyack Associates") and Thomas M. Tyack ("Tyack") on the grounds that the claims in plaintiff's complaint were not timely filed.
In July of 1989, Huntington National Bank ("HNB") filed a complaint against plaintiff, who at the time was represented by Tyack and his law firm, Tyack Associates. In response to HNB's complaint, defendants filed an answer that asserted no counterclaims on plaintiff's behalf. Subsequently, HNB filed a motion for summary judgment which the trial court granted, entering judgment for HNB against plaintiff in March of 1990. Plaintiff did not appeal the decision.
On January 4, 1994, plaintiff filed a complaint against HNB, alleging claims he apparently possessed at the time of HNB's initial suit in 1989. On July 1, 1994, HNB moved for summary judgment, asserting plaintiff's claims were compulsory counterclaims that should have been and were not asserted in the 1989 suit, and thus were barred by the doctrine of res judicata. On December 16, 1994, before HNB's motion was decided, plaintiff dismissed his complaint pursuant to Civ.R. 41(A).
On August 29, 1996, plaintiff filed the present action, asserting claims of legal malpractice against defendants arising out of the 1989 lawsuit and defendants' failure to file counterclaims on behalf of plaintiff. Defendants filed a motion for summary judgment, asserting that plaintiff's claims were barred by the statute of limitations under R.C. 2305.11(A). The trial court granted defendants' motion. Plaintiff appeals, assigning the following errors:
 I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CONCLUDING THE ATTORNEY-CLIENT RELATIONSHIP BETWEEN APPELLANT AND APPELLEES TERMINATED MORE THAN ONE YEAR PRIOR TO THE FILING OF APPELLANT'S COMPLAINT.
 II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CONCLUDING A COGNIZABLE EVENT OCCURRED SO AS TO TRIGGER THE STAUTE OF LIMITATIONS MORE THAN ONE YEAR PRIOR TO THE FILING OF APPELLANT'S COMPLAINT.
 III. THE STATUTE OF LIMITATIONS GOVERNING LEGAL MALPRACTICE ACTIONS DOES NOT AND CANNOT BEGIN TO RUN IN A CASE OF LITAGATION MALPRACTICE UNLESS AND UNTIL THE CLIENT HAS INCURRED LEGAL, NON-SPECULATIVE DAMAGE AS A DIRECT RESULT OF THE ATTORNEY'S MALPRACTICE, CONTRARY TO THE CONCLUSION OF THE TRIAL COURT[.]
Because the trial court granted defendants' summary judgment motion, we examine plaintiff's assigned errors in the context of Civ.R. 56. In accordance with Civ.R. 56, the evidence must be construed most strongly in favor of the non-moving party; summary judgment should be granted only if no genuine issue of fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64. A motion for summary judgment first forces the moving party to inform the court of the basis of the motion and to identify portions in the record which demonstrate the absence of a genuine issue of material fact.Dresher v. Burt (1996), 75 Ohio St.3d 280, 296. If the moving party makes that showing, the non-moving party then must produce evidence on any issue for which the party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, paragraph three of the syllabus (Celotex v.Catrett [1986], 477 U.S. 317, approved and followed).
Plaintiff's first and second assignments of error are related and assert the trial court erred in finding plaintiff's claim against defendants barred by the applicable statute of limitations. Pursuant to R.C. 2305.11(A), a claim of legal malpractice must be filed within one year of the time the cause of action accrues. A legal malpractice claim accrues when "there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." Zimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54, syllabus. The determination of when a cause of action of malpractice accrues is a question of law to be reviewed de novo by this court. Greene v. Barrett (1995),102 Ohio App.3d 525, 530; Whitaker v. Kear (1997), 123 Ohio App.3d 413,420.
Plaintiff's first assignment of error contends the trial court erred in finding that the attorney-client relationship terminated more than a year before he filed his complaint. For purposes of the accrual of a legal malpractice claim, an attorney-client relationship terminates "when the attorney-client relationship for that particular transaction or undertaking terminates." Zimmie, supra, at 58. "Generally, the attorney-client relationship is consensual, subject to termination by acts of either party. A client may terminate the relationship at any time." Columbus Credit Co. v. Evans (1992), 82 Ohio App.3d 798,804 (citations omitted). Conduct which dissolves the essential mutual confidence between attorney and client signals the termination of the attorney-client relationship. Brown v.Johnstone (1982), 5 Ohio App.3d 165, 166-167 (indicating that an explicit statement terminating an attorney-client relationship would not be necessary to terminate such a relationship).
Here, Tyack's affidavit states that neither he nor any attorney in his firm ever provided any legal services to plaintiff after February 1993. Attached to Tyack's affidavit are (1) billing records from Tyack Associates which do not show any legal billings after that date, (2) a letter dated August 3, 1993, in which plaintiff requested from defendants copies of any and all documents relating to defendants' representing plaintiff in the HNB matter, and (3) a letter dated April 12, 1995, from plaintiff's new attorney, Rudy Bisciotti, notifying Tyack that Bisciotti had filed suit against HNB on plaintiff's behalf, and asking Tyack if he would testify in the matter. Indeed, in that letter, Bisciotti reminded Tyack about the first suit against plaintiff in 1989 and wrote that "[y]ou represented Mr. Disabato then and filed an Answer on behalf of Mr. Disabato in September of 1989." In response to defendants' evidence, plaintiff's affidavit stated he had never received from, nor written a letter to, Tyack indicating that the attorney-client relationship had been terminated.
Given the foregoing evidence, the attorney-client relationship was terminated on January 4, 1994, when Bisciotti filed a complaint on behalf of plaintiff against HNB, as retaining another attorney to file a suit regarding the same subject matter is an affirmative act demonstrating to a reasonable person that the attorney-client relationship had ended. Brown, supra. At the latest, and for the same reasons, Bisciotti's April 12, 1995 letter terminated the relationship.
Citing Flynt v. Brownfield, Bowen Bally (C.A.6, 1989),882 F.2d 1048, plaintiff nonetheless argues that an attorney-client relationship may be terminated only when the attorney unambiguously advises the client that the relationship is over. Flynt applied Brown to its facts and found a letter notifying the client that the attorney-client relationship had been terminated and was an "affirmative act" sufficient to put the client on notice that the relationship in fact had ended. Flynt,supra, at 1052. Flynt, however, did not require such a letter; it merely found that such a letter terminated the relationship in that case.
Indeed, Brown specifically rejected the proposition that an explicit statement from the attorney was required to terminate the relationship. Brown, supra, at 166. Rather, as the court inBrown explained, "conduct which dissolves the essential mutual confidence between attorney and client" signifies the end of the relationship. Id. Here, Bisciotti's April 12, 1995 letter to defendants, as well as Bisciotti's actually filing a complaint on plaintiff's behalf against HNB, demonstrate conduct which dissolves the mutual confidence between plaintiff and defendants.
While plaintiff suggests in his argument on appeal that he had a continuing relationship with defendants beyond the HNB litigation, the evidence does not support his contentions. Rather, the affidavits supplied in connection with summary judgment motion indicate a single instance where defendants represented plaintiff, and thus the attorney-client relationship needs to be terminated only for that particular transaction or undertaking. Zimmie,supra. The fact that Bisciotti filed suit against HNB, alleging the same claims that plaintiff claims Tyack failed to file in the original suit, signifies that the attorney-client relationship forthat particular transaction had been terminated.
Even if all the above is construed most favorably to plaintiff, no issue of genuine fact is in dispute and reasonable minds could come to no conclusion but that the attorney-client relationship was terminated more than a year before plaintiff's complaint in this action filed on August 29, 1996. Plaintiff's first assignment of error is overruled.
In his second assignment of error, plaintiff contends the trial court erred in finding that a cognizable event occurred more than a year before the filing of plaintiff's complaint. The trial court found that the judgment entry filed in favor of HNB against plaintiff in March of 1990 constituted a cognizable event to invoke the statute of limitations. Alternatively, the trial court found that HNB's motion for summary judgment on July 1, 1994, asserting that plaintiff's claims were compulsory counterclaims and were barred by res judicata, was a cognizable event.
A cognizable event is that which would alert a reasonable person that a questionable legal practice may have occurred.Zimmie, supra. See, also, Spencer v. McGill (1993),87 Ohio App.3d 267, 278 (holding that a cognizable event is one that does or should alert a reasonable person that attorney committed an improper act in its legal representation of client). An injured person need not be aware of the full extent of the injury before there is a cognizable event. Zimmie, supra.
HNB's summary judgment motion was a cognizable event sufficient to put plaintiff on notice that a questionable legal practice may have occurred while defendants were representing him. See McDade v. Spencer (1991), 75 Ohio App.3d 639; TheSchultz Trust v. Strachan (June 2, 1994), Cuyahoga App. No. 66550, unreported; Whitaker, supra. HNB's motion expressly argued that plaintiff's claims were compulsory counterclaims that were lost because they were not filed in the 1989 action, thereby putting plaintiff on notice that a questionable legal practice had occurred. Zimmie, supra. Neither certainty as to the nature of the counterclaims, nor a determination that they are compulsory counterclaims is necessary. Spencer; McDade, supra.
Rather, the issue is whether the filing did or should have put plaintiff on notice that the claims might be compulsory counterclaims. McDade, supra. HNB's motion for summary judgment did so.
Given the foregoing and the absence of disputed material facts, the trial court properly concluded that HNB's motion for summary judgment should have put plaintiff on notice that Tyack's failure to assert the counterclaims in the litigation HNB initiated against plaintiff potentially was improper. Stanley v.Magone (Dec. 11, 1995), Butler App. No. CA95-05-096, unreported;Lowe v. Cassidy (Nov. 3, 1994), Franklin App. No. 94APE06-784, unreported (1994 Opinions 5054). Because HNB's motion for summary judgment was filed on July 1, 1994, more than one year before plaintiff's complaint was filed, plaintiff's complaint is untimely. Plaintiff's second assignment of error is overruled.
Failing to have timely filed this action under the analysis posited in his first two assignments of error, plaintiff argues in his third assignment of error that a judicial determination of the underlying claim is necessary before a cause of action for legal malpractice accrues because without a judicial determination, no injury, and no actual, non-speculative damages exist as a result of the alleged malpractice. Without such an injury or actual damages, plaintiff argues no cause of action can accrue. See, e.g., Michels v. Sklavos (Ky. 1994), 869 S.W.2d 728;Hibbard v. Taylor (Ky. 1992), 837 S.W.2d 500. Continuing his argument, plaintiff asserts that because he voluntarily dismissed the complaint in which the allegedly compulsory counterclaims were asserted, and thus no court has determined whether the counterclaims in fact are compulsory, the statute of limitations has not begun to run even now because no actual injury has occurred. Plaintiff maintains, for example, that the claims in question could be found to be permissive counterclaims in a subsequent judicial determination and, if so, plaintiff would have suffered no injury or damage and, indeed, no legal malpractice would have occurred.
In Zimmie, the Ohio Supreme Court expressly rejected the proposition that a client is entitled to wait for an appellate determination on the merits of a claim underlying a potential legal malpractice case before the statute of limitations commences. Id. at 58. The court found that such a rule would be contrary to its previous holdings in Hershberger v. Akron CityHosp. (1987), 34 Ohio St.3d 1 and its progeny: "In these cases, we found that a factual inquiry into the circumstances of a case establishes when the cause of action accrues and the period of limitations commences in a malpractice action." Zimmie, supra, at 58-59. Such a factual analysis would determine when the injured party became aware of, or should have become aware of, the extent and seriousness of the injury that would put a reasonable person on notice of the need for further inquiry. Hershberger, supra, at 4. A rule requiring a judicial determination, as plaintiff urges, would render the factual analysis called for in Zimmie andHershberger unnecessary. See Barna v. Joseph (June 22, 1989), Cuyahoga App. No. 56806, unreported (rejecting the proposition that a cause of action for legal malpractice only accrues at the time injury is realized in a court judgment).
While plaintiff relies heavily on Michels, supra, Ohio courts have consistently applied the rule of Zimmie. In Spencer,
appellants there alleged legal malpractice in the preparation of a partnership agreement by appellees, their attorneys. The agreement was entered into in December 1983. A dispute arose between the parties to the agreement over the interpretation of a clause in the agreement proposed by counsel. Appellants argued in their legal malpractice action that they suffered no actual injury or damage until they were sued by the other parties to the agreement. The court, however, found appellants' interpretation of R.C.2305.11(A) to be too restrictive, stating that "`[i]njury' is not defined monetarily; rather, it is defined in terms of notice. Whether there was an `injury' depends upon when an event has occurred `which does or should alert a reasonable person' that appellee committed an improper act in its legal representation of appellants." Id. at 278. The court thus concluded that appellants' legal malpractice cause of action accrued when they were put on notice of the extent and seriousness of the differing interpretations of the clause in the partnership agreement. Id.
The court did not require certainty or a judicial determination that one interpretation or the other was the correct one.
Presented with similar facts, this court reached a similar result in McDade, supra. In that case, McDade sued Spencer, his attorney, for legal malpractice concerning a separation agreement Spencer allegedly entered into without McDade's consent in January 1987. McDade was cited for contempt in 1987 for failure to comply with the terms of the separation agreement and was found to be in contempt on July 31, 1989. On appeal, the finding of contempt was reversed for insufficient evidence. McDade v. McDade (Sept. 27, 1990), Franklin App. No. 89AP-991, unreported (1990 Opinions 4333). McDade then filed a malpractice suit against Spencer, alleging Spencer signed the separation agreement without authorization. The trial court dismissed McDade's claims as being time barred under R.C.2305.11(A).
On appeal to this court, McDade argued that his cause of action for legal malpractice did not accrue and the statute of limitations did not begin to run until he was found in contempt on July 31, 1989. Rejecting that contention, this court stated that:
 An ultimate determination on the issue of contempt is not necessary, under the facts of this case, to commence the running of the one-year statute of limitations. The focus of the inquiry should be on the point of discovery, that is, awareness, that the client discovered or should have discovered that he has been injured by the attorney's act or omission. The focus should be on what the client was aware of and not an extrinsic judicial determination. McDade, supra, at 642-643. (Emphasis added.)
Ultimately, this court determined that the statute of limitations began running not upon the judicial finding of contempt, but rather when McDade knew in 1987 of the terms of the separation agreement. Such knowledge was evidenced by the motions filed seeking to hold McDade in contempt for failure to abide by the terms of the separation agreement. See, also, Whitaker, supra,
(finding legal malpractice cause of action accrued when client learned of a lawsuit against him based on actions he took upon counsel's advice, not when court entered judgment against him in that lawsuit).
Thus, contrary to plaintiff's contention, his cause of action accrues not when actual damages occur as a result of some judicial determination, but when he knew or should have known of his counsel's alleged failure. Plaintiff's third assignment of error is overruled.
Having overruled plaintiff's three assignments of error, we affirm the judgment of the trial court.
BOWMAN and KENNEDY, JJ., concur.