{¶ 47} I respectfully dissent, as I believe that there remains a genuine issue of material fact as to whether and when the attorney-client relationship between Steven Koerber and Levey Gruhin, Mr. Levey, and Mr. Dombek terminated in this case.
 {¶ 48} An attorney-client relationship is indeed consensual in nature, and the actions of either party to the relationship can affect its continuance. Brown v. Johnstone (1982),5 Ohio App.3d 165, 167. "[C]onduct which dissolves the essential mutual confidence between attorney and client signals the termination of the [attorney-client] relationship." Id. at 166. This Court has stated that
"the termination of the attorney-client relationship depends * * * on conduct, an affirmative act by either the attorney or the client that signals the end of the relationship. For a trial court to grant summary judgment on this basis, such an act mustbe clear and unambiguous, so that reasonable minds can come tobut one conclusion from it. [Where] an act can be reasonably viewed as other than a clear, unambiguous signal that the attorney-client relationship is at an end, summary judgment is improper." (Emphasis added.) Mastran v. Marks (Mar. 28, 1990), 9th Dist. No. 14270, citing Brown, 5 Ohio App.3d at 166.
 {¶ 49} The Supreme Court of Ohio reasoned that "`[i]mplementation of the termination rule in those situations where the client discovers or should have discovered the legal malpractice prior to the termination of the attorney-client relationship will encourage the parties to resolve their disputes without litigation and will stimulate the attorney to mitigate the client's damages.'" Murphy v. Hyatt Legal Servs. (Dec. 1, 1993), 9th Dist. No. 16194, quoting Omni-Food Fashion, Inc.v. Smith (1988), 38 Ohio St.3d 385, 387. The Court further explained that
"[b]y permitting the particular circumstances of an attorney-client relationship to guide a court on whether to apply the discovery rule or termination rule, the proper balance is struck between fairness and judicial economy, and the desire of the General Assembly to limit the time period within which this type of action may be brought." Omni-Food,38 Ohio St.3d at 388.
 {¶ 50} From a review of Steven's deposition testimony, I find that it is questionable whether and when a clear and unambiguous act occurred, from which Steven could glean that the original attorney-client relationship had been extinguished, and a new attorney-client relationship was formed. See Mastran, supra. Steven stated during his deposition that he first learned of Levey Gruhin's dissolution when he received a letter in the mail notifying him of this fact. Steven additionally stated that pursuant to this letter, he went to the office of Gruhin 
Gruhin, where he and the attorneys at the firm had a discussion regarding Levey Gruhin's dissolution.
 {¶ 51} The Koerbers assert in their brief on appeal, that when Steven signed the contingency agreement with Gruhin Gruhin on January 15, 2000, he believed that he was still remaining with the firm of Levey Gruhin; they argue that "it was immaterial to [him] whether the name of the firm was Levey Gruhin or Gruhin 
Gruhin. In his mind, it was still the same firm he had hired." During his deposition testimony, Steven explained that Gruhin 
Gruhin established their firm in the same office that once contained Levey Gruhin; and since the Koerbers' files and records were physically at this location, Steven stated that he preferred to "stay with the firm where it was at." Steven also asserted that he did not seek out Mr. Levey's legal advice after he signed the agreement with Gruhin Gruhin. He further asserted that he had understood, at the time that he signed the contingency fee agreement, that Mr. Levey was no longer involved in the case.
 {¶ 52} However, Steven's deposition testimony raises a doubt as to whether he clearly understood the distinction between the two law firms and the nature of the legal representation. When asked during the deposition about his decision to sign a new contract for legal representation in January 2000, Steven answered in the following manner: "Well, the only reason I stayed with Levey Gruhin is because that's where my records were and I didn't want to have someone try to dig up and try to figure out what this case was about." Then, the following discourse occurred:
"Q: And that's why I had asked you before, you didn't think about, say, signing up with Hal Levey instead of with Gruhin 
Gruhin; is that correct?
"A: I was trying to do what was best for the case.
"Q: And what did you think was best for the case, or was that the answer that you gave me?
"A: To stay with the firm where it was at.
"Q: Okay. It was in the same location where you had been going before?
"A: Yes."
 {¶ 53} The following statements made by Steven during his deposition further substantiate the fact that he was confused regarding the legal representation:
"Q: Do you still believe that Gruhin Gruhin and Ochs and Vanik are your attorneys?
"A: Right now?
"Q: Yes.
"A: No.
"Q: Why not?
"A: Because they're relieved. When I picked up the records, they're not my attorneys now.
"Q: When did you pick up the records?
"A: Oh, I can't recall the exact dates.
"Q: Why did you pick up the records?
"A: Because at the time — I can't explain it to you. Why I picked up the records, because some of them blew the statute of limitations.
"Q: What is the statute of limitations?
"A: I am not sure. I am not a lawyer."
 {¶ 54} On March 29, 2000, Steven signed a second agreement with Gruhin Gruhin that added the firm Ochs and Vanik as co-counsel for the case, a copy of which was also introduced during Steven's deposition. When asked whether he understood that with the addition of Ochs and Vanik that Mr. Dombek would no longer be working on the case, Steven replied that "[a]ll I can see is, you know, that Ochs Vanik must have took [sic.] over then. I don't know." Counsel then asked Steven whether, when he was signing this new agreement, did he do so with an understanding that he was no longer dealing with Mr. Levey and Mr. Dombek, Steven replied, "I can't recall the conversations. I just can't do it. I'm trying to remember as much as possible."
 {¶ 55} While a reasonable jury could find that Steven terminated the original relationship with Levey Gruhin, Mr. Levey, and Mr. Dombek at the time that he signed the new contingency fee agreement in January 2000, one can also conclude that this "change of hands" was not a clear and unambiguous severance of the relationship. Given both the circumstances of Levey Gruhin's dissolution and the manner in which the legal representation of Levey Gruhin's previous cases was handled administratively, the attorneys in this case unfortunately created a situation in which a client could reasonably conclude that he or she was continuing business in the same legal relationship.
 {¶ 56} Regarding the Koerbers' second assignment of error, I would find that it is not necessary for this Court to address the propriety of the trial court's determination with respect to the cognizable event or events. Even accepting arguendo the last possible date of March 7, 2001 as the date of the cognizable event, this date is nevertheless earlier than the last possible date for the termination of the attorney-client relationship, January 16, 2002. See Scovern v. Farris (Feb. 21, 1996), 9th Dist. No. 17352, quoting Zimmie v. Calfee, Halter Griswold
(1989), 43 Ohio St.3d 54, syllabus. Further evaluation is necessary to determine the exact date of the termination of this relationship.
 {¶ 57} Thus, in viewing the evidence in the light most favorable to the Koerbers as required by Civ.R. 56(C), I would conclude that reasonable minds cannot necessarily come to but one conclusion as to when and whether the attorney-client relationship clearly and unambiguously terminated in this case. See Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327. See, also, Mastran, supra; Murphy, supra. Therefore, I would conclude that a genuine issue of material fact remains as to when the attorney-client relationship terminated in this case, and therefore, that the trial court erred in granting summary judgment in favor of Levey Gruhin, Mr. Levey, and Mr. Dombek, on this basis. I would sustain the Koerbers' first assignment of error, and not address the second assignment of error. Furthermore, I would reverse the judgment of the trial court and remand the case to the trial court for further proceedings.
 {¶ 58} I do not take issue with the majority's disposition of Levey Gruhin's first and second cross-assignments of error.