R.E. HOLLAND EXCAVATING, INC. Appellant,

v.

MARTIN, BROWNE, HULL & HARPER, P.L.L., et al. Appellees.

[Cite as *R.E. Holland Excavating, Inc. v. Martin, Browne, Hull & Harper, P.L.L.*, 162 Ohio App.3d 471, 2005-Ohio-3662.]

Court of Appeals of Ohio,
Second District, Clark County.

No. 2004–CA–45.

Decided July 15, 2005.

Alfred William Schneble III, for appellant.

Michael Romanello and Lisa R. House, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant R.E. Holland Excavating, Inc. appeals from a summary judgment rendered against it, upon statute-of-limitations grounds, upon its legal-malpractice complaint against defendant-appellee Martin, Browne, Hull & Harper, P.L.L. ("Martin Browne"), the law firm that had represented Holland in an employer intentional-tort lawsuit, in which it had been a defendant. Holland contends that the trial court erred by rendering summary judgment against it because there is a genuine issue of material fact concerning when the attorney-client relationship ended, at which point the statute of limitations began to run, since Holland was already on notice of a potential legal-malpractice claim. We agree.

{¶ 2} Although it is clear from the record that the attorney-client relationship between Holland and Martin Browne had become clouded by Holland's realization that it might have a legal-malpractice claim against Martin Browne, we cannot say that the attorney-client relationship unequivocally ended until Martin Browne's motion to withdraw was granted on January 16, 2002. The legal-malpractice action was filed on January 16, 2003, exactly one year later. The statute of limitations for legal malpractice is one year.

{¶ 3} The summary judgment rendered against Holland is reversed, and this cause is remanded for further proceedings.

I

{¶ 4} The city of Urbana, a defendant in *Hill v. Urbana*, Clark County Common Pleas case No. 89–CV–74, brought R.E. Holland Excavating, Inc. into

that case as a third-party defendant. Martin Browne was retained by Cincinnati Insurance, Holland's insurance carrier, to defend Holland in that action. Robert Holland, the owner of Holland, retained John Slagle to represent Holland in a declaratory judgment action that Holland had brought to determine issues of insurance coverage. Alfred W. Schneble III was also retained to consult with Slagle.

{¶ 5} In September, 2001, Holland's liability in *Hill v. Urbana* was settled for $155,000, of which Cincinnati Insurance paid $25,000. Holland paid the remaining $130,000.

{¶ 6} Earlier, in August, 2001, Schneble sent Martin Browne a letter informing Martin Browne that Holland believed Martin Browne might have been negligent in its representation, proximately causing damage to Holland. Schneble requested a copy of Martin Browne's malpractice insurance policy. In an affidavit in the legal-malpractice action with which this appeal is concerned, Schneble avers that he did not intend by this letter to terminate Martin Browne's representation, but intended, instead, to advise Martin Browne that Holland was attempting to mitigate its damages by settling with Hill, so that Martin Browne could take whatever steps it might deem advisable to protect Martin Browne's interests.

{¶ 7} Martin Browne responded to the Schneble letter by denying any negligence on its part. In its response, Martin Browne did not evince any intention to terminate its representation of Holland, nor did Martin Browne indicate that it understood that its representation of Holland had terminated.

{¶ 8} Martin Browne had expressed a willingness to sign an entry dismissing the claims against Holland as part of the settlement of Hill's lawsuit, and, to that end, a dismissal entry was forwarded to Martin Browne for signature on behalf of Holland. However, Martin Browne's malpractice carrier disapproved of the idea of Martin Browne signing the dismissal entry on Holland's behalf.

{¶ 9} On December 27, 2001, Martin Browne filed a motion to withdraw as Holland's counsel in the Hill litigation. Although this fact was communicated by Martin Browne to John Slagle, an attorney whom Holland had consulted concerning the possibility of a legal-malpractice claim against Martin Browne, that same letter, dated January 2, 2002, expressly contemplated that Martin Browne might, nevertheless, perform the legal service of approving an entry dismissing all claims in the Hill litigation.

{¶ 10} On January 16, 2003, exactly one year after the trial court had granted Martin Browne's motion to withdraw as counsel, Holland brought this legal-malpractice action. Martin Browne moved for summary judgment, contending that the action is barred by the one-year statute of limitations for legal malpractice. The trial court agreed, finding that the attorney-client relationship between

Holland and Martin Browne had terminated by the time of the August 7, 2001 letter from Schneble, on Holland's behalf, stating that Holland believed Martin Browne had been negligent in its representation. The trial court further found that, even if the August 7, 2001 letter could not be said to have heralded the end of the attorney-client relationship, Martin Browne's December 27, 2001 motion to withdraw as counsel surely did so, and this was more than one year before the filing of the malpractice action. Accordingly, the trial court rendered summary judgment in favor of Martin Browne.

{¶ 11} From the summary judgment rendered against it, Holland appeals.

## II

{¶ 12} Holland's sole assignment of error is as follows:

{¶ 13} "The trial court erred in granting summary judgment based on its finding that the complaint was filed more than one year after termination of the attorney-client relationship."

{¶ 14} For statute-of-limitations purposes, a legal-malpractice action accrues, and the statute of limitations begins to run, when (1) there is a cognizable event from which the client discovers, or reasonably should discover, that the injury complained of is related to the attorney's act or omission and the client is put on notice of a need to pursue possible remedies against the attorney or (2) the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later. *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, 538 N.E.2d 398, syllabus. In the case before us, there appears to be no question that the first event referred to in *Zimmie v. Calfee, Halter & Griswold* had occurred by August 7, 2001, more than one year preceding the filing of the malpractice action, when Schneble, on Holland's behalf, sent Martin Browne the letter in which he asserted that Holland believed Martin Browne had been negligent in its representation. If an event satisfying the first prong of *Zimmie* were sufficient, in and of itself, to terminate the attorney-client relationship, there would be no need of the second prong. Although an attorney-client relationship is ideally characterized by the client's reposing trust and confidence in the attorney, this is not always the case. As one example, an indigent criminal defendant may complain to the trial court that his assigned defense counsel is not adequately representing him and that he has lost all confidence in his assigned counsel, and the defendant may request that new counsel be substituted. If the trial court, rightly or wrongly, denies the motion and the original assigned defense counsel appears at trial, examines witnesses, cross-examines witnesses, interposes objections, or fails to do any of these, it can hardly be said that counsel is not providing legal services to the client, notwith-

standing the client's lack of trust in counsel. A similar situation might easily arise when an insurance carrier provides counsel to defend its insured, and the insured, despite lacking confidence in counsel, is without the means to hire independent counsel. A lack of trust and confidence in counsel may, but will not necessarily always, lead to the termination of the attorney-client relationship; in any event, that lack of trust and confidence does not constitute the termination of the relationship.

{¶ 15} The crucial issue in this appeal is whether there is a genuine issue of material fact whether the second prong of *Zimmie* is satisfied—that is, when the evidence is viewed in a light most favorable to Holland, whether a reasonable mind can only conclude that the attorney-client relationship between Holland and Martin Browne, in connection with the Hill litigation, terminated before January 16, 2002. We bear in mind the following: (1) Robert Holland's averment in his affidavit that he was not aware of Martin Browne's motion to withdraw as counsel until that motion was granted on January 16, 2002, and (2) the January 2, 2002 letter from Martin Browne to Slagle in which it is expressly contemplated that Martin Browne might provide further legal service to Holland in the form of approving and signing a dismissal entry in the Hill litigation. We therefore conclude that a reasonable mind could find from the evidence in this record that the attorney-client relationship had not terminated until Martin Browne's intention to withdraw had been communicated to Holland.

{¶ 16} Martin Browne relies upon two cases for the proposition that the attorney-client relationship between it and Holland must, as a matter of law, be deemed to have occurred before January 16, 2002, when Holland became aware of Martin Browne's motion to withdraw. One of these cases is *Brown v. Johnstone* (1982), 5 Ohio App.3d 165, 5 OBR 347, 450 N.E.2d 693. In that case, the court relied upon the following facts in upholding a summary judgment for the attorney-defendant upon statute-of-limitations grounds:

{¶ 17} "It is uncontroverted that as of September 1, 1978, as a result of Brown's contact, Barrett from the Akron Bar Association told Brown that his workers' compensation claim was closed, that he should seek the aid of another attorney and that Johnstone had been reprimanded as a consequence of Brown's original complaint. A copy of the decision was sent with Barrett's letter. At this point an affirmative act had occurred which was sufficient to put Brown on notice as a reasonable man that the attorney-client relationship with Johnstone had terminated." Id. at 167, 5 OBR 347, 450 N.E.2d 693.

{¶ 18} Admittedly, these facts are not entirely dissimilar from those in the case before us, and the issue is a close one. Nevertheless, we conclude that a crucial distinction is that the proceedings in which the defendant-attorney had been representing the plaintiff-client in *Brown v. Johnstone,* supra, had concluded. It

was over. That fact, combined with the fact that the plaintiff-client had filed a complaint with the bar association that had resulted in the defendant-attorney's having been reprimanded, all of which was known by the plaintiff-client by September 1, 1978, required a holding, as a matter of law, that the attorney-client relationship had ended as of that date. But in the case before us, the Hill litigation, in which Martin Browne was representing Holland, was not quite over. To be sure, the settlement that had been negotiated signified that the litigation was almost over, but there remained a legal proceeding in which a reasonable mind might reasonably find that Martin Browne still represented Holland.

{¶ 19} The other case upon which Martin Browne relies is *Wozniak v. Tonidandel* (1997), 121 Ohio App.3d 221, 699 N.E.2d 555. Martin Browne cites this case for the proposition that an attorney-client relationship may terminate before the trial court grants an attorney's motion to withdraw. However, the facts in that case from which the court concluded that a termination of representation had been effectively communicated to the client were stark:

{¶ 20} "Defendant states in his affidavit that '[m]y engagement was to serve as counsel during the trial. I did not agree to represent Tom Wozniak for anything following the trial. The engagement letter of July 30, 1992 and the amendment of August 2, 1992 speak expressly in terms of the trial of the action.'

{¶ 21} "Trial was postponed until November 4, 1992. After eight days of trial, the jury rendered its verdict on November 16, 1992. In his affidavit, defendant further states that after the verdict was announced, 'I told Tom Wozniak in the courtroom that my firm's engagement was over. We had agreed to represent him in the trial. The trial was behind us. I told him that I would do no further work.' Thereafter, on November 24, 1992, defendant sent a letter to plaintiff which stated as follows:

{¶ 22} " 'As you know, this office's engagement was to represent you at the recently concluded jury trial in the above case.

{¶ 23} " 'This will confirm our discussion following the trial that we are not responsible for any post-trial procedures which you might desire, such as a motion for new trial, motion for judgment notwithstanding the verdict, notice of appeal or any other possible procedures, and we do not intend to do any such procedures.

{¶ 24} " 'For your information, the deadline for filing motions for new trial and/or judgment notwithstanding the verdict is fourteen days after entry of judgment. As you know, the deadline for filing a notice of appeal is thirty days after entry of judgment.

{¶ 25} " 'In accordance with your telephone discussion with Debbie Kackley, we are advising plaintiff's counsel that we are not authorized to approve the

judgment. You can check the court's docket to see when the judgment is entered.'

{¶ 26} "On December 14, 1992, plaintiff, acting *pro se,* filed a motion for judgment notwithstanding the verdict and a motion for a new trial. These motions were denied by the probate court.

{¶ 27} "Subsequent to these motions, defendant filed a motion to withdraw as counsel. On December 21, 1992, the trial court journalized the order granting defendant's motion to withdraw." *Wozniak v. Tonidandel,* 121 Ohio App.3d at 224, 699 N.E.2d 555.

{¶ 28} Given the clarity with which the defendant-attorney in *Wozniak* communicated to the plaintiff-client that his representation was terminated, it is not surprising that the appellate court held that the attorney-client relationship had terminated even before the formal granting of the motion to withdraw by the trial court:

{¶ 29} "In the case at bar, the attorney-client relationship was terminated on November 16, 1992 when, after the jury verdict, defendant told plaintiff that his firm's engagement was over. The fact that plaintiff understood that their relationship terminated on this date is reflected by his own affidavit, which states as follows:

{¶ 30} " 'After the jury portion of the trial was concluded, the defendant approached me in the lunch area of the court house and advised me that his firm "was not going to handel [*sic* ] the appeal." I acknowledged this statement, as this was my understanding of the agreement. He then advised me that he knew of a client of his who had hired one attorney for negotiations, one for trial and one for appeal portion of a case.'

{¶ 31} "Thus, plaintiff understood that the attorney-client relationship, which had existed for trial only, had been terminated by defendant after the return of the jury verdict. This termination was confirmed in the November 24, 1992 letter, in which defendant unambiguously states that his firm will not be responsible for any post-trial or appellate matters and advises plaintiff of the time frame if plaintiff wanted to file any post-trial motions or an appeal. This letter unequivocally communicated to plaintiff that any further action in the case would occur without defendant as his attorney. It is reasonable to infer that plaintiff understood from this letter that the relationship was over because he subsequently filed his own *pro se* motion for judgment notwithstanding the verdict and new trial.

{¶ 32} "Plaintiff's argument that defendant's representation lasted until the court granted his motion to withdraw is meritless. This court recently rejected this very argument and held that in a statute of limitations context the conduct of

an attorney can terminate an attorney-client relationship prior to the filing of the notice of withdrawal." *Wozniak v. Tonidandel,* 121 Ohio App.3d at 226–227, 699 N.E.2d 555.

{¶ 33} In *Wozniak v. Tonidandel,* there can be no question, as a result of the client's own admission, that he knew that his attorney in the underlying litigation was no longer representing him well before the trial court granted his attorney's motion to withdraw. In the case before us, by contrast, Holland was not aware that Martin Browne had either withdrawn as its counsel or had taken the position that it no longer represented Holland until Holland became aware of the entry granting Martin Browne's motion to withdraw as Holland's counsel.

{¶ 34} We conclude, therefore, that there is a genuine issue of material fact concerning when the attorney-client relationship in this case ended, thereby causing the statute of limitations to begin to run. We cannot say, as a matter of law, that when the evidence in this record is viewed in a light most favorable to Holland, a reasonable mind could only conclude that the statute began to run before January 16, 2002, one year to the day before the filing of this malpractice action.

{¶ 35} Holland's sole assignment of error is sustained.

### III

{¶ 36} Holland's sole assignment of error having been sustained, the summary judgment rendered against it is reversed, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

WOLFF and GRADY, JJ., concur.