OPINION
{¶ 1} Plaintiff-appellant, Mary Ruckman ("appellant"), appeals from the judgment of the Franklin County Court of Common Pleas, in which that court entered summary judgment against appellant and in favor of defendant-appellee, Zacks Law Group LLC ("appellee"), on appellant's claim for legal malpractice. *Page 2 
 {¶ 2} This case began when appellant filed a complaint on July 18, 2006, alleging that appellee negligently rendered or negligently failed to render legal services to appellant in 2004 and 2005. On August 24, 2006, appellee filed a motion to dismiss appellant's complaint, arguing that it failed to comply with the Ohio Rules of Civil Procedure, and that it failed to state a claim upon which relief may be granted because appellant's claims were time-barred.
 {¶ 3} On November 22, 2006, the court granted the motion to dismiss with respect to any alleged malpractice that occurred before July 17, 2005 (one year prior to the filing of the complaint), but overruled the motion to the extent that appellant sought recovery for malpractice occurring after that date. The trial court explained:
 [T]o the extent that the Plaintiff continued to expect to receive representation in the 2005 hearing, and to the extent she had paid for such representation (and it is arguable that she could have reasonably expected that the $7,000 she states she paid as a retainer would remain, because there is no indication that it was spent on anything), her allegedly rebuffed attempts to obtain legal representation after July 17, 2005 for the money she paid state a cause of action * * *
 {¶ 4} On December 27, 2006, appellee filed an answer, denying the validity of all claims. In April 2007, appellee propounded upon appellant requests for admissions, pursuant to Civ.R. 36, but she failed to respond to same, whereupon appellee filed a motion to deem them admitted. On April 25, 2007, appellee filed a motion for summary judgment. In support thereof, appellee attached the affidavit of attorney Benjamin S. Zacks ("Zacks"). Attached to Zacks' affidavit were, inter alia, a copy of the parties' engagement letter, and a copy of appellant's August 11, 2003 letter to appellee. Appellant never filed any response to appellee's motion for summary judgment. *Page 3 
 {¶ 5} On May 23, 2007, the trial court deemed admitted the matters in the requests for admissions. On August 8, 2007, the trial court granted appellee's motion for summary judgment. The court determined that the final contact between the parties took place in June 2004, that the attorney-client relationship terminated, at the latest, as of June 2004, and, therefore, the applicable one-year statute of limitation barred all of appellant's claims.
 {¶ 6} Appellant timely appealed, and presents a single assignment of error for our review:
 THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT WHEN THE RECORD PRESENTS GENUINE ISSUES OF MATERIAL FACT THAT DEMAND RESOLUTION BY THE TRIER OF FACT.
 {¶ 7} Preliminarily, we shall address appellee's motion to dismiss appellant's appeal, filed on September 7, 2007. Appellee's motion to dismiss contains no arguments for dismissal. Rather, it presents arguments going solely to the merits of appellant's assignment of error. Accordingly, we deny appellee's motion to dismiss, and shall proceed with resolution of the merits of this appeal based upon both parties' briefs.
 {¶ 8} The following facts and procedural history are germane to this appeal, and are undisputed unless otherwise noted. On April 23, 2003, appellant met with appellee to discuss litigation then pending in the Franklin County Court of Common Pleas, General Division, entitledRusso v. Foxfire Village Condominium Unit Owners Assn. ("Russo
litigation"). In the Russo litigation, appellant was one of several condominium owner-plaintiffs suing their owners' association over its denial of their requests to inspect books and records. *Page 4 
 {¶ 9} Though other counsel represented the Russo plaintiffs, Ruckman told Zacks that she was concerned that she was not adequately asserting all of her personal claims against the owners' association and others through the Russo lawsuit. She told Zacks that she wanted to discuss the possibility of filing a new complaint, or amending the Russo complaint, to assert new claims on behalf of her only. She was aware that a mediation conference had been scheduled in the Russo litigation, and she had not attended the mediation conference, and wanted to know whether the case had been settled in her absence. Further, appellant had drafted her own answer to the Russo defendant's counterclaim, and wanted the answer to be reviewed by an attorney.
 {¶ 10} Appellant again met with Zacks on May 1, 2003. She reiterated her concerns that her individual interests were not being adequately pursued in the Russo litigation. She told Zacks that she needed to know whether a scheduled trial in that case would go forward on the trial date. According to Zacks' affidavit:
 As such, [appellant] and I discussed a plan in which [appellee] would contact the other counsel as well as the Court to determine the outcome of the scheduled mediation, to investigate the current climate of the case and to inquire as to whether the scheduled upcoming trial was to go forward. At this time, I stated that [appellee] would be representing [appellant] in the context of the telephonic inquiries in order to prepare a strategy and would not become immediately involved in the [Russo litigation], because it remained to be seen whether [appellant's] interests would be better served by the bringing of a separate action, rather than attempting to belatedly bring her additional claims in the [Russo litigation.] On May 1, 2003, an engagement letter was signed by [appellant] and myself.
(Zacks Affidavit, ¶ 4.) *Page 5 
 {¶ 11} The May 1, 2003 engagement letter defined the scope of representation as follows:
 You have asked us to provide legal services for you and to quickly contact opposing counsel and the other Plaintiffs, counsel and Magistrate Angel to make an appearance on your behalf and to prepare the strategy necessary to advance your individual claims, including determining if an amended complaint could be filed or whether you should bring an independent lawsuit for your claims which may be outside the scope of the existing lawsuit. If there is the opportunity to assist you in other legal matters we would be happy to do so and would set forth the scope of that matter in the same general format as this engagement letter.
(Exhibit 1 attached to Zacks Affidavit.)
 {¶ 12} In the engagement letter, appellee acknowledged receipt of a retainer check in the amount of $7,000. According to Zacks, he explained to appellant that litigation is expensive and that trial preparation could easily cost between $20,000 and $50,000. Zacks further averred that, "[n]o formal appearance was made because contrary to [appellant's] concerns, no matter was pending and until [appellant's] claims were evaluated, the formal appearance was not necessary." (Zacks Affidavit, ¶ 5.)
 {¶ 13} In his affidavit, Zacks went on to explain:
 On or about June 17th and on July 3, 2003, after reviewing the file and considering Ruckman's additional claims, I informed [appellant] that a separate action would better serve [her] than attempting to bring her additional claims in the [Russo litigation]. On July 3, 2003, [appellant] had called [appellee] in a particular panic because code enforcement officers were at her residence and she needed immediate help so they would not move her out of her residence. I and [appellee] responded by going over to [appellant's] home and dealing with the code enforcement personnel.
 I spoke with [appellant] and informed her that [appellee] would be preparing a proposed Complaint for her to review, but that *Page 6 
she needed to approve it and provide supporting documentation. [Appellant] also had asked that no mail be sent to her and that she would come by the office. At that point, [appellee] had not yet received much of the documentation that [appellant] had discussed with me and [appellee], and the Complaint as drafted did not include all of the information that [appellant] wished to be included; consequently, I informed [appellant] that I would like [her] to review the draft of the Complaint and then contact [appellee] to address any additional information or evidence that she felt should be included.
 During an August 4, 2003 meeting, I explained to [appellant] that I was not yet satisfied with the draft, because [appellee] did not yet have sufficient evidence to support many of the claims contained therein, and I was relying on [appellant] to provide [appellee] with additional detail and documentation to support her claims. It was my understanding that [appellant] did not expect the draft Complaint to be filed until she had provided [appellee] with sufficient additional information and documentation to support the claims that she wished to assert.
 In a hand delivered letter dated August 11, 2003, [appellant] expressed to me that, not only did she not like the draft of the Complaint, but that she had been "upset at first, then frustrated and became somewhat depressed." * * * She stated her belief that I did not understand what she had been put through by the defendants in the contemplated lawsuit, but also acknowledged that she needed to provide [appellee] with additional documentation. * * * She stated in the letter that she was in the process of drafting an "informative letter" to fill in the gaps of the Complaint, and was also searching for additional documentary evidence to support her claims. * * * While these documents were accompanied by a brief cover letter, they did not include the "informative letter" that [appellant] had reported to me she was drafting for use in conjunction with completing the Complaint.
 Thereafter, [appellee] contacted [appellant] by phone and explained that [appellee] was waiting on [appellant] to provide the additional information required to complete her Complaint. However, it was not forthcoming. [Appellee] additionally did not receive any informative letter that [appellant] had indicated she would draft to provide the additional information *Page 7 
necessary to complete the Complaint. Essentially, from August 2003 through June of 2004, nothing happened in her matters.
 In or about June of 2004, [appellant] telephoned [appellee] from the courthouse, asking why I was not present at a pretrial in the [Russo
litigation]. A paralegal who was then employed by [appellee] informed [appellant] that I was unavailable to speak to her since I was out of the state on vacation. [Appellee] received a second telephone call minutes later from the Court's bailiff, who informed the paralegal that [appellee] was "not in trouble" since [appellee] was not listed as counsel of record in that matter, were not mailed notices by the Court, and the Court was not expecting anyone from [appellee] to appear.
 This June 2004 telephone call from [appellant] was the final contact between [appellant] and [appellee]. On or about July 27, 2004, [appellee] received a copy of a grievance filed against them by [appellant].
 [Appellant] did not expect to receive representation in the 2005 hearing, and the amount which she paid with her retainer had been exhausted by legal services performed by [appellee] in 2003. Moreover, [appellant] did not attempt to contact myself or [appellee] for legal representation after July 17, 2005.
(Footnote omitted.) (Zacks Affidavit, ¶ 6-13.)
 {¶ 14} The claims that appellant wished to assert in the new complaint, but for which she had not provided sufficient information and documentation, included claims for declaratory judgment, slander of title, handicap discrimination, emotional distress, and punitive damages. (Zacks Affidavit, fn 1.)
 {¶ 15} We review the trial court's grant of summary judgment de novo.Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is proper only when the party moving for summary judgment demonstrates: (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of *Page 8 
law; and (3) reasonable minds could come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, when the evidence is construed in a light most favorable to the nonmoving party. Civ.R. 56(C); State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343. If the moving party has satisfied its initial burden under Civ.R. 56(C), then the nonmoving party has a reciprocal burden, outlined in Civ.R. 56(E), to set forth specific facts showing that there is a genuine issue for trial. Dresher v. Burt (1996), 75 Ohio St.3d 280, 293,662 N.E.2d 264.
 {¶ 16} Section 2305.11(A) of the Ohio Revised Code provides that a legal malpractice claim must be commenced within one year following the date upon which the cause of action accrued. Asente v. Gargano, Franklin App. No. 04AP-278, 2004-Ohio-5069, ¶ 11, discretionary appeal not allowed, 105 Ohio St.3d 1439, 2005-Ohio-531, 822 N.E.2d 811. InZimmie v. Calfee, Halter Griswold (1989), 43 Ohio St.3d 54,538 N.E.2d 398, the Supreme Court of Ohio established the following two-part test to determine when a claim for legal malpractice accrues:
 Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later.
Id. at syllabus.
 {¶ 17} The trial court in this case determined that, on the evidence presented, the attorney-client relationship had terminated (and, thus, appellant's claim had accrued) *Page 9 
more than one year prior to the date appellant commenced her action, and that there existed no material issue as to this fact. The determination of the date of accrual of a cause of action for legal malpractice is a question of law that is reviewed de novo on appeal. Whitaker v.Kear (1997), 123 Ohio App.3d 413, 420, 704 N.E.2d 317. The determination of when the attorney-client relationship for a particular transaction terminates is a question of fact. Omni-Food Fashion, Inc. v.Smith (1988), 38 Ohio St.3d 385, 388, 528 N.E.2d 941. However, "[t]he question of when the attorney-client relationship was terminated may be taken away from the trier of fact * * * if `affirmative actions that are patently inconsistent with a continued attorney-client relationship' have been undertaken by either party." Steindler v. Meyers, Lamanna Roman, Cuyahoga App. No. 86852, 2006-Ohio-4097, ¶ 11, citingDowney v. Corrigan, Summit App. No. 21785, 2004-Ohio-2510.
 {¶ 18} "Generally, the attorney-client relationship is consensual, subject to termination by acts of either party." Columbus Credit Co. v.Evans (1992), 82 Ohio App.3d 798, 804, 613 N.E.2d 671. "`[C]onduct which dissolves the essential mutual confidence between attorney and client' signifies the end of the [attorney-client] relationship." DiSabato v.Tyack Assoc. Co., L.P.A. (Sept. 14, 1999), Franklin App. No. 98AP-1282, 1999 Ohio App. LEXIS 4212, at *8, citing Brown v.Johnstone (1982), 5 Ohio App.3d 165, 166-167, 450 N.E.2d 693. "An explicit statement terminating the relationship is not necessary."Triplett v. Benton, Franklin App. No. 03AP-342, 2003-Ohio-5583, ¶ 13, citing Brown, supra, at 166-167.
 {¶ 19} Upon our de novo review of the summary judgment in this case, we agree with the trial court that the parties' attorney-client relationship terminated, and appellant's *Page 10 
cause of action accrued, more than one year prior to the date upon which she commenced the instant action. The parties' engagement letter defined the scope of appellee's duties to provide legal services to appellant. The scope of these duties included contacting opposing counsel and the court in May 2003, in order to ascertain the then-current state of theRusso litigation, and determining whether appellant's individual interests would be best represented by amending the complaint in theRusso litigation or by commencing a new action. The engagement letter specifically stated that the scope of any additional legal services that appellee would provide would be set forth in a second engagement letter. It is undisputed that the parties never entered into an additional contract and, though appellee prepared an incomplete draft complaint for use in a contemplated separate action, appellant never provided the necessary information and documentation in order for that complaint to be completed and filed, despite appellee's repeated requests for that information and appellant's promise that she would provide it.
 {¶ 20} Even if appellant believed that the parties had agreed that appellee would represent her in the Russo litigation, she was put on notice that appellee failed to represent her when she called appellee in June 2004 to inquire why Zacks was not present at a pretrial conference, and was advised that appellee did not represent her and that Zacks would not be attending the pretrial. Under Zimmie, this was a cognizable event that would have triggered the running of the statute of limitation.
 {¶ 21} It is undisputed that the parties never had any contact after June 2004, and that Zacks received notice in July 2004 that appellant had filed a grievance against him and appellee. This, coupled with the fact that the parties had no contact with one another after June 2004, demonstrates the absence of any genuine issue with respect to the date *Page 11 
upon which the parties' attorney-client relationship terminated. Moreover, appellant represented herself in the Russo litigation until the case was terminated, including filing pro se motions. "Pro se filings * * * are evidence that the attorney-client relationship has been terminated." Triplett, supra, at ¶ 16, citing State v. Wente, Cuyahoga App. No. 81721, 2003-Ohio-3659.
 {¶ 22} For all of these reasons, the trial court was correct in concluding that appellant's cause of action accrued well before July 17, 2005, which is one year before appellant commenced this action. For this reason, appellant's claims are time-barred and appellee was entitled to summary judgment in its favor. Accordingly, we overrule appellant's single assignment of error, and affirm the judgment of the Franklin County Court of Common Pleas.
Motion to dismiss denied; judgment affirmed.
 McGRATH, P.J., and BRYANT, J., concur. *Page 1